## Modern Brotherhood of America v. Phelps.

(Decided March 2, 1911.)

Appeal from Jessamine Circuit Court.

Insurance—Life Insurance—Representations of Agent.—Presumptions of Agency—Estoppel.—Where an applicant for life insurance had no possible means of knowing the extent to which the agent of an insurance company was authorized to bind the company, but could only judge from appearances, and when the company permitted such agent to exercise such powers as might be exercised by a general agent or the company itself, and transactions were had with him on the faith and belief that he was clothed with power and authority to represent the company to the extent and manner in which he undertook to represent it, the company will not be heard to deny that he had such power and authority.

G. ALLISON HOLLAND and JOHN H. WELCH for appellant.

N. L. RUNNAUGH for appellee.

Opinion of the Court by Judge Lassing—Affirming.

About November 30, 1907, appellee, Thomas Clement Phelps, made application for membership in the local lodge of the order known as the Modern Brotherhood of America, which was being organized at High Bridge, Jessamine county, Kentucky. At the same time he applied for a benefit certificate or policy of insurance upon his life in the sum of $1,000. The medical examination required was submitted to and the applicant passed a good examination. On the 9th of December following, the Modern Brotherhood of America issued to said Phelps a benefit certificate or policy, wherein it agreed to pay the beneficiaries named therein the sum of $1,000 upon the death of said Phelps while in good standing. The certificate further provided that, "one-fourth the amount the beneficiary would be entitled to in case of death will be paid to said member should he accidentally lose a hand at or above the wrist, a foot at or above the ankle, or for the total, permanent loss of the sight of an eye." After said certificate of membership or policy was issued it was sent to the local agent at High Bridge to be delivered to Phelps. After he had submitted to his medical examination, but before the policy was issued, he sustained an accidental injury to one of his eyes. Knowledge of this fact was brought home to the local

agent, and, upon the advice of the company, he declined to deliver the policy and collect the premiums and dues thereon.   Thus matters stood for some weeks, during which time the injured eye of Phelps continued to improve, and the agent, believing that it would get all right, delivered the policy to him and collected the dues thereon and reported to the company.   Before the policy was delivered, however, the local agent caused the applicant's eye to be examined by a competent physician, and not until he had thus satisfied himself was the policy delivered. Subsequently an abscess developed upon the injured eye and it became apparent that Phelps would lose the sight thereof.   Knowledge of this fact was communicated to the company and the local agent was directed to return the premiums collected from Phelps and have him surrender the policy.   This Phelps declined to do.   His eye grew worse, and finally he lost the sight thereof entirely. He demanded of the company the payment of the $250. This was refused.   He sued for it, and upon a trial recovered judgment for this amount.   The company now appeals and seeks a reversal because of errors in the admission of evidence and in instructing the jury.

The application for the insurance contained a provision that the certificate should not become binding upon the company until the policy had been delivered to the applicant in good health.   The facts pleaded were to the effect that, although the application contained this provision, and the policy was not in fact delivered to the applicant while in good health, still, with the knowledge that he had suffered an injury to his eye, the company had gone ahead and delivered the policy to him, and had thereby waived this provision in the application.

Two questions are presented: First, did the agent of the company who delivered the policy have authority to make such a waiver, and second, if he was clothed with this authority, did he exercise it?   He admits that he knew, and that the company knew, that appellee's eye was injured between the date of the medical examination and the delivery of the policy.   In fact, this delivery was withheld for several weeks because of this injury to appellee's eye.   It is further shown, and not denied, that before the policy was delivered the local agent caused the eye to be examined by a physician.   This examination evidently satisfied him that there would be a complete recovery, although the eye was not at that time well.

He thereupon delivered the policy, collected the premiums and dues thereon, and continued to collect them and report to the company until it was ascertained that the eye was not going to get well. Then the company sought to return the premiums and recall the policy.

Undoubtedly, the provision in the application that the policy should not become operative and binding until it was delivered to the applicant in good health was waived, if the local agent had authority to bind the company to that extent. What was his authority? It appears that he had complete charge of the local lodge, transacted all of its business for the parent lodge, kept the books, received the dues, forwarded the money, delivered the policies—in short, transacted all of the business that it was possible for the company to transact with the members of that lodge. An applicant for insurance had no possible means of knowing the extent to which he was authorized to bind the company, but could only judge from appearances, and when the company permitted him to exercise such powers as might be exercised by a general agent or the company itself, and transactions were had with him on the faith and belief that he was clothed with power and authority to represent the company to the extent and in the way and manner in which he undertook to represent it, it will not be heard to deny that he had such power. As was said in Connecticut Indemnity Ass'n v. Grogan's Admr., 21 Ky. Law Rep., 717, where it was insisted that a local agent had waived a condition in the application without right or authority:

"But this court has often held that an agent has such power. An agent who has authority to take application for insurance and power to collect the premium and remit the same to the company, as was done in this case, clearly has the power to determine as to whether the insured is entitled to receive the policy, and to waive any question as to sound health."

In that case the application contained a provision that the policy should not become binding until the premiums were paid and the policy delivered to the insured while in good health. When the policy was delivered the insured was sick of typhoid fever, and this fact was known to the agent who, in spite of this knowledge, delivered the policy and collected the premium. The company there sought to avoid liability on the ground

that the local agent had no authority to waive the provision of the application referred to. In our opinion that case is conclusive of the question here under consideration. The agent in this case was clothed with more apparent authority than was the agent in the Grogan case, and the court there held that a waiver by the agent of a similar provision in the application for that policy was binding upon the company. The only possible distinction that can be drawn between that case and the one under consideration is that a stronger case is presented here for the appellee. These pivotal questions were submitted to the jury under appropriate instructions.

The objections raised to the evidence that tended to show that the local agent, in making the delivery of the policy before there was a complete recovery of appellee's injured eye, was acting upon the advice of or under the direction of someone connected with the company superior in authority to him, becomes unimportant, since the local agent, in the absence of such authority, had the power to bind the company in waiving the provision of the application in question.

Upon the whole case we are satisfied that the judgment of the lower court does justice between the parties, and it is, therefore, affirmed.