GRAYSON v. GRAND TEMPLE AND TAB-
ERNACLE IN STATE OF TEXAS OF
KNIGHTS AND DAUGHTERS OF TA-
BOR OF THE INTERNATIONAL ORDER
OF TWELVE. (No. 5359.)

(Court of Civil Appeals of Texas. San Antonio.
Dec. 5, 1914.)

1. INSURANCE (§ 750*)—MUTUAL BENEFIT IN-
SURANCE—STATUTES.
    Under Rev. St. 1911, art. 4834, providing
that every certificate issued by a fraternal bene-
fit association shall constitute the contract be-
tween the association and the member, no re-
covery of a death benefit can be had where the
member was in default in payment of his endow-
ment dues, and the benefit certificate recited
that unless he was in good standing, and all
payments and assessments had been made, the
beneficiary should not be entitled to the benefit.
    [Ed. Note.—For other cases, see Insurance,
Cent. Dig. §§ 1895, 1896, 1903; Dec. Dig. §
750.*]

2. INSURANCE (§ 697*)—FRATERNAL BENEFIT
INSURANCE—WAIVER OF PROVISIONS.
    Under Rev. St. 1911, art. 4847, declaring
that a local branch of a fraternal association
cannot waive any provisions of the laws and
constitution of the association, the association
cannot be estopped by the conduct of a local
body.
    [Ed. Note.—For other cases, see Insurance,
Cent. Dig. § 1838; Dec. Dig. § 697.*]

3. BENEFICIAL ASSOCIATIONS (§ 18*)—INSUR-
ANCE—BENEFITS.
    Where the member of a fraternal associa-
tion had paid burial taxes, although he was in
arrears to the local society for two months'
dues, and also in arrears to the general society
for endowment dues, his beneficiary is entitled
to the funeral benefit; the member not having
been notified of his lapse and being in good
standing with the local lodge, regardless of his
standing with the general society.
    [Ed. Note.—For other cases, see Beneficial
Associations, Cent. Dig. §§ 41–50; Dec. Dig. §
18.*]

Appeal from Bexar County Court for Civil
Cases; John H. Clark, Judge.

Action by L. E. Grayson against the Grand
Temple and Tabernacle in the State of Texas
of the Knights and Daughters of Tabor of
the International Order of Twelve. From a
judgment for defendant, plaintiff appeals.
Reversed and rendered.

T. H. Ridgeway, of San Antonio, for appel-
lant. Carlos Bee and C. C. Todd, both of
San Antonio, for appellee.

FLY, C. J. This suit was instituted by ap-
pellant for $300, insurance on the life of
her husband, William Grayson, deceased, and
$75, a funeral benefit. The cause was sub-
mitted to a jury on special issues, and upon
their answers judgment was rendered for ap-
pellee.

[1] Appellee is a fraternal benefit society,
and William Grayson was a member thereof
when he was killed in the boiler explosion in
the roundhouse of the Galveston, Harrisburg
& San Antonio Railway Company at San
Antonio on March 18, 1912. He had a life
certificate in said society for $300, but, by

reason of a failure to pay certain sums re-
quired by the constitution and by-laws, he
was not in good standing or, as the members
put the matter, he was "unfinancial," and his
surviving wife was not entitled to receive
the $300 benefit. The endowment tax had
not been paid by Grayson for January, Feb-
ruary, and March, 1912. By the terms of
the benefit certificate, the beneficiary was not
entitled to the $300 at his death, unless he
was "in good standing in his * * * tem-
ple, * * * as provided for in the constitu-
tion, with the monthly dues and assessments
paid in at the time of his * * * death, as
the record of the Grand Temple and Taber-
nacle will sustain the fact." William Gray-
son had not paid the monthly dues and as-
sessments, but died leaving them unpaid, as
found by the jury. Under the laws of the
society, "when the endowment tax of a Sir
Knight or Daughter of Tabor fails to reach
the Secretary of the Endowment Board by
the twentieth day in the first month in each
quarter, said Knight or Daughter of Tabor
stands unfinancial with the Endowment
Board of Grand Curators until the same is
paid and reaches the Endowment Secretary's
office."

It did not require the report of the secre-
tary of the local society as to the delinquen-
cy of Grayson, but the mere fact that the en-
dowment tax did not reach the secretary of
the endowment board was sufficient to put
him on the delinquent list. His membership
in the local society may not have been affect-
ed by his delinquency, but his interest in the
endowment fund was affected. It is pro-
vided by law that every certificate issued
by a fraternal benefit association "shall con-
stitute the contract between the association
and the member." Rev. Stats. art. 4834.
That contract not only provided that Gray-
son must be in good standing, but the month-
ly dues and assessments must be paid in at
the time of his death.

[2] There could be no waiver of any of the
provisions of the laws and constitution of
the association by the local body, because it
is expressly provided in the statutes that no
such waiver can be made. Rev. Stats. art.
4847. There could therefore be no question
of estoppel, even if it had been alleged and
proved, which it was not.

[3] The burial tax had been paid by Wil-
liam Grayson and, if he was in arrears for
two months' dues, he had not received the
30 days' notice required. He was in good
standing, as far as the local society was con-
cerned, although behind on the endowment
fund. The uncontroverted testimony showed
that Grayson was not suspended or expelled,
but was in good standing, so far as the local
society was concerned. The jury had no tes-
timony upon which to find that he was not in
good standing, if such was their intention.
The question embodied two matters, that of

good standing and that of payment of all dues and assessments, and the answer was in the negative without specifying the subject as to which the answer was given. He had failed to pay some dues and one endowment assessment, but had not been suspended, and consequently was in good standing in his local temple. His widow is entitled, under the laws of the society and the evidence, to the $75 burial expenses.

The judgment will be reversed, and judgment here rendered that appellant recover of appellee the sum of $75, less the dues to the local society for February and March, 1912, and all costs of this and the lower court.