SOVEREIGN CAMP, WOODMEN OF THE WORLD, v. WERNETTE.
(No. 6273.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 12, 1919. Rehearing Denied Dec. 10, 1919.)

1. INSURANCE ☞815(2)—ANSWER OF INSURER RAISING ISSUE OF FRAUD IN PROCURING FRATERNAL CERTIFICATE.

In the absence of exceptions, the allegations of an answer of a fraternal insurer *held* sufficient to raise the issue that the applicant was guilty of fraud in falsely representing that he was not engaged in the saloon business when in fact, he was engaged in such business, which occupation was prohibited by the insurer, etc.

2. INSURANCE ☞723(8) — FALSE STATEMENT THAT APPLICANT WAS NOT ENGAGED IN PROHIBITED OCCUPATION.

Where an applicant for membership in a fraternal insurer which classed saloon keeping as a prohibited occupation falsely represented that he was not engaged in the saloon business, and thus procured a certificate, such certificate is null and void because of the misrepresentation, and recovery cannot be allowed, though the member paid assessment for long period.

3. EVIDENCE ☞370(4) — APPLICATION FOR MEMBERSHIP IN FRATERNAL SOCIETY.

Where there was no attack on the genuineness of an application for membership in a fraternal insurance society, the application, which was signed by deceased, proves itself.

4. INSURANCE ☞724(2)—ESTOPPEL OF INSURER TO RELY ON FALSE STATEMENT BY APPLICANT.

Where the applicant for membership in a fraternal insurer falsely stated that he was not engaged in the saloon business, and the clerk issuing the certificate testified he did not know that the applicant was so engaged, the insurer cannot be estopped to rely on the false statement in the application because it was well known in the community that the applicant was engaged in the saloon business, which was one of the occupations prohibited by the by-laws of insurer, etc.

5. INSURANCE ☞724(1)—FRATERNAL SOCIETY NOT ESTOPPED BY KNOWLEDGE OF SUBORDINATE OFFICER.

Since Acts 33d Leg. c. 113, § 20 (Vernon's Sayles' Ann. Civ. St. 1914, art. 4847), provides that a fraternal insurer may provide by its constitution and by-laws that no subordinate body of subordinate officers shall have power to waive any of its provisions, no estoppel can arise against a fraternal insurer because of the acts or knowledge of a subordinate officer, where the by-laws contain such prohibition against waiver, etc.

6. INSURANCE ☞723(8)—FALSE REPRESENTATION AS TO PROHIBITED OCCUPATION BARS RECOVERY.

Where deceased at the time of his application for membership in a fraternal insurer falsely represented that he was not engaged in the saloon business, whereupon he was admitted to membership and paid assessments until death, no recovery can be allowed on the certificate because of those provisions of by-laws of the insurer which, after forbidding the insuring of persons engaged in the saloon business, allowed members who thereafter entered such prohibited occupation to continue their insurance upon payment of an additional assessment.

7. INSURANCE ☞724(2) — ESTOPPEL OF FRATERNAL INSURERS BY ACCEPTANCE OF PREMIUMS.

Where, at the time deceased became a member of a fraternal insurance society which included saloon keeping within the prohibited occupations, the clerk of the fraternal insurer knew that deceased was engaged in the business of a saloon keeper, the insurer, having accepted premiums paid, is estopped from asserting the invalidity of the certificate, although it was provided in the policy that an agent might not waive its conditions.

8. INSURANCE ☞724(2) — TO ESTOP FRATERNAL SOCIETY IT MUST HAVE KNOWLEDGE OF FALSE STATEMENT IN APPLICATION.

To estop a fraternal insurer to claim a forfeiture of the certificate because of the member's false statements that he was not engaged in a prohibited occupation, it must appear that the clerk had actual knowledge that deceased was engaged in the prohibited occupation, and such knowledge cannot be presumed.

9. INSURANCE ☞723(8) — CONSTRUCTION OF BY-LAWS AS TO PROHIBITED OCCUPATION BY OFFICER OF FRATERNAL SOCIETY.

Where deceased from time of his application for membership until death was a member of a partnership engaged in the hotel and saloon business, deceased managing the hotel, and his partner the saloon, he was engaged in the saloon business within the by-laws of a fraternal insurer prohibiting the insuring of persons

in such business, notwithstanding the clerk of the insurer construed the prohibition to extend only to those actively selling intoxicants, etc.

10. INSURANCE ⊜723(2)—EFFECT OF INCONTESTABLE CLAUSE ON VOID CERTIFICATE.

Where a fraternal insurance certificate was void because of false representations made by the applicant in his application, it was never in force, and could not be validated by an incontestable clause.

11. INSURANCE ⊜719(1) — INCONTESTABLE CLAUSE IN POLICY OF FRATERNAL SOCIETY.

An incontestable clause added by the bylaws to a fraternal insurance certificate does not have a retroactive effect so as to make incontestable a certificate which had already been issued for a period of five years, after expiration of which time it was provided there should be no contest; hence, where the incontestable clause was in less than the five years fixed changed so as to allow contests when insured shall die while engaged in prohibited occupations, a certificate issued on deceased's false representation that he was not engaged in prohibited occupation may be contested, though it had been issued more than five years.

12. INSURANCE ⊜745 — INCONTESTABLE CLAUSE IN POLICY OF FRATERNAL SOCIETY.

There is no law requiring fraternal benefit insurance societies to put incontestable clauses in their certificates, as is demanded by Rev. St. 1911, § 4741, of health, life, and accident companies, and consequently clauses of that kind in certificates of fraternal insurers derive their authority, not from statute, but from contract.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action by Eliza Wernette against the Sovereign Camp, Woodmen of the World. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

E. D. Henry, Perry S. Robertson, and Atlas Jones, all of San Antonio, for appellant.

Perry J. Lewis, H. C. Carter, Champe G. Carter, and Randolph L. Carter, all of San Antonio, for appellee.

FLY, C. J.    This is a suit for $1,100 brought by appellee, $1,000 being for insurance on the life of Joseph Wernette, her deceased husband, and $100 for a monument to his memory, which it was alleged appellant had agreed to furnish. The defense was that deceased, at the time of his death and for years prior thereto, was a saloon keeper and engaged in the retailing of intoxicating liquors as a beverage, which was prohibited by the constitution and laws of the fraternal association, and that deceased had not paid the additional sum each month required when a member changes from a vocation allowed to one prohibited, nor had he given the required notice in writing of such change.    The cause was submitted to the court without a jury, and judgment rendered in favor of appellee for the amount for which she sued.

On December 2, 1908, Joseph Wernette was insured, appellee, his wife, being the beneficiary, by appellant in the sum of $500 if he should die within a year, or $1,000 should he live longer than two years. The certificate binds the insured by all of the laws, rules, and regulations then "in force or which may hereafter be enacted." Deceased died in January, 1918, leaving appellee as his survivor and the beneficiary in the certificate of insurance.

When Joseph Wernette applied for membership in the association, he represented his occupation as that of hotel proprietor, and also represented that he was not directly or indirectly following the occupation of a "saloon keeper, bartender, nor engaged in the retailing of intoxicating liquors as a beverage." At the time that the certificate was issued deceased was engaged in running a hotel and saloon in partnership with Frank Grimsinger, and the saloon was in a room of the hotel. Deceased had immediate supervision of the hotel part of the business, and Grimsinger had immediate control and supervision of the saloon. The profits of hotel and saloon were divided between Grimsinger and the insured, Joseph Wernette. The hotel and saloon business was continued by the partners from a time before the policy of insurance was issued to deceased up to the time of his death in January, 1918. Grimsinger testified that he and the insured were equal partners in the hotel and saloon business; that they had been engaged in such business as partners from September, 1908, until he died. It was agreed by the insured in his application for membership "that any untrue statements or answers made by me in this application * * * or any concealment of facts in this application, * * * intentional or otherwise," should render the beneficiary certificate null and void.

In section 42 of the constituion and bylaws of the Sovereign Camp, Woodmen of the World, in effect since July 1, 1907, it is provided:

"Persons engaged in the following classes of business or employment shall not be admitted:

"Employés in ammunition factories, balloonists, plow grinders, sand stone cutters, grindstone turners, those employed in anthracite coal mines, saloon keepers, bartenders; those engaged in the retailing of intoxicating liquors as a beverage; also persons employed in the making, compounding, distilling, rectifying or brewing of malt, spirituous, vinous or intoxicating liquors, or in the distribution or delivery of the same.

"The beneficiary certificate of a member who shall engage in any prohibited occupation shall thereby become null and void unless such member shall within thirty days after engaging in

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

such prohibited occupation notify the clerk of his camp, in writing, of such change of occupation, and thereafter, while so engaged, pay an additional sum of fifty cents on each assessment for each one thousand dollars of his beneficiary certificate."

The evidence showed that there was no change of occupation, but, if there had been, that insured never gave notice to the clerk of the camp in writing that he was engaged in the business of a saloon keeper or in retailing intoxicating liquors as a beverage, nor ever paid the additional sum of 50 cents on each assessment. The evidence as to deceased being engaged in the saloon as well as the hotel business was uncontradicted. Zizik, the clerk of appellant, swore that he investigated the occupation of Joseph Wernette when he applied for membership, and did not know he was engaged as a saloon keeper, or that he retailed intoxicating liquors. The testimony tended to show that the clerk of the local camp did not know that there was a saloon in the hotel conducted by appellee, but that he raised the question when the application was filed as to whether Wernette, who had formerly owned a saloon, was out of the saloon business, and was informed that he was at that time in the hotel business. The application was received under that belief. Zizik did not testify that he knew there was a saloon in the hotel controlled by Wernette. No one connected with appellant testified that he knew Wernette was engaged in the business of a saloon keeper.

[1] No exceptions were urged to the pleadings of appellant. In the first amended original answer it was alleged that—

"At the time said certificate was issued defendant did not issue certificates to a saloon keeper, or bartender, or one engaged in the retailing of intoxicating liquors as a beverage, or in the distribution or delivery of malt or intoxicating liquors, and defendant says that when insured applied for said certificate he represented to defendant, in writing, that he was not a saloon keeper or bartender, and that he was not engaged in the retailing of intoxicating liquors as a beverage, and that he was not engaged in the distribution or delivery of malt or spirituous liquors."

Appellant was permitted to file a trial amendment of the paragraph herein quoted, and it was alleged in the trial amendment that the representations were untrue, and that by reason of such false representations the certificate was null and void. In the absence of exceptions, the allegations were sufficient to support a finding of fraud in obtaining the issuance of the certificate. The very terms of the contract upon which the certificate was issued made it void if the representation as to occupation was untrue, and the representation made by Wernette was alleged to be untrue. The facts alleged

constituted fraud, whether the party making the representations knew they were true or not. It is alleged that appellant did not issue certificates to persons engaged in retailing spirituous liquors, and, if the representations as to not being engaged in that business were false, the certificate was necessarily issued by reason of such false representations. Riggins v. Trickey, 46 Tex. Civ. App. 569, 102 S. W. 918.

[2] The uncontroverted facts clearly and indubitably show that Joseph Wernette, at the time he applied to appellant for insurance, was engaged in retailing intoxicating liquors. The saloon in the hotel was a part of the hotel business, and appellee cannot shield herself from the effects of the representations made by insured as to his business or occupation, or the concealment of the fact that along with his hotel business he was engaged in selling liquor, because his partner actually did the selling of the intoxicants while the insured attended to the other part of the hotel business. The legal effects of the contract cannot be avoided without making a new one for the parties. For reasons deemed sufficient to it, appellant had declared that no saloon keeper or person who sold intoxicating liquors at retail could become a member of its organization, and in order to guard against the admission of members of that class it provided that an applicant must disclose his occupation, and that falsehood or concealment in regard to it should render a certificate issued upon the misrepresentation null and void. Strict payment of all assessments could not render vital a certificate rendered void by fraud and concealment.

In the case of Dwight v. Germania Life Ins. Co., 103 N. Y. 342, 8 N. E. 654, 57 Am. Rep. 729, the appellant had stated that he was not engaged in the manufacture or sale of intoxicating liquors, and it was shown by the facts that he was a hotel keeper and sold wines and liquors to his guests, and the New York Court of Appeals held that the statement was false, was a breach of warranty, and forfeited the policy. As said by the court:

"Parties to an insurance contract have the right to insert such lawful stipulations and conditions therein as they may mutually agree upon, or which they may consider necessary and proper to protect their interests, and which, when made, must be construed and enforced like all other contracts according to the expressed understanding and intent of the parties making them. If an insurance policy in plain and unambiguous language makes the observance of an apparently immaterial requirement the condition of a valid contract, neither courts nor juries have the right to disregard it or to construct, by implication or otherwise, a new contract in the place of that deliberately made by the parties."

Again, citing May on Insurance, the court held:

"In considering the language of an insurance contract, the words of a promise are to be regarded as those of the promisor, while those of a representation upon which the promise is founded are the words of the promisee, and are to be taken most strongly against the party using them."

To the same effect is Holland v. Supreme Council, 54 N. J. Law, 490, 25 Atl. 367.

[3, 4] Although it is contended by appellee that the evidence does not show that deceased signed the application for insurance, it may be stated that the application, purporting to be signed by Joseph Wernette on November 7, 1908, was placed in evidence, no attack having been made upon its genuineness, and it, of course, proves itself. No contest was made on that point. The evidence showed that the application was made while Wernette was running a hotel and saloon, and that he represented that he was not directly or indirectly "engaged in the retailing of intoxicating liquors as a beverage." At that very time he was directly engaged in retailing liquors in a saloon in his hotel, and there is no testimony tending to show that appellant knew that he was so engaged. The assertion of his son, Elmer Wernette, that every one knew his father's business was a mere conclusion, and not based on the facts. Appellee swore that he was not in the saloon business, but was conducting a hotel.

It may be taken as settled that the doctrine of estoppel applies to fraternal benefit societies, and, where it appears that by the fault of one party another has been induced innocently or ignorantly to change his position for the worse in such manner that it would operate as a virtual fraud upon him to allow the party by whom he has been misled to gain by it, the party permitting such inducement cannot profit by it. If Joseph Wernette had disclosed in his application the facts as to the saloon in which he was a partner being conducted in the hotel, and, in spite of the knowledge of those facts by the clerk, appellant had issued the policy and accepted payment for years of the premiums or assessments, estoppel might arise, but where such facts were not disclosed, and the deceased stated positively that he was not engaged in retailing intoxicating liquors, and the knowledge of such retailing is not brought home to the knowledge of the clerk, although he tried to investigate and ascertain the facts, the doctrine of estoppel would not apply. We have seen no case in which the knowledge of members of a local lodge or organization would be the knowledge of the organization, but it is usually confined to the knowledge of the clerk, secretary, or recorder who takes the applications and receives the assessments. In the case of Woodmen of the World v. Putnam, 206 S. W. 970, decided by the Court of Civil Appeals of the Ninth District, the clerk went to the saloon of the insured where he was retailing liquor and collected assessments, and it was found by the court that the clerk knew that the insured was retailing liquor and had been at it for nine years preceding his death. That was a case of a member entering a prohibited business after obtaining his certificate. Under those circumstances the certificate was not forfeited unless the insured failed to give notice in writing of his entering the prohibited occupation and failed to pay an increased assessment. The court found that the clerk was the duly authorized agent to collect the dues or assessments, and, although he knew that the insured had gone into the retail liquor business, he made no effort to collect the additional assessment. The facts of this case do not bring it within the purview of the Putnam Case.

[5] It may be well in this connection to state that the decisions as to waiver and estoppel cited by appellee were made in cases in which the acts upon which they were based occurred prior to 1913, as did those in this case, and the same rule cannot properly be made as to facts occurring since that year. In 1913 it was enacted by the Legislature of Texas that—

"The constitution and laws of the society may provide that no subordinate body nor any of its subordinate officers or members shall have the power or authority to waive any of the provisions of the laws and constitution of the society, and the same shall be binding on the society and each and every member thereof and on all beneficiaries of members." Acts 33d Leg. c. 113, § 20 (Vernon's Sayles' Ann. Civ. St. 1914, art. 4847).

There could, therefore, no question of waiver or estoppel arise under the facts of this case on account of any acts or knowledge of Zizik since 1913.

[6] The facts of this case do not bring it within the scope of the provision of the rule enacted by appellant as to change from an occupation permitted to one prohibited, because the insured did not change his occupation, but from the time that he obtained his insurance to the hour of his death he was engaged in conducting a hotel and saloon business, and the forfeiture must be based, if at all, on representations made to obtain the insurance, and estoppel, if it arises, must be based on the knowledge of appellant through its clerk of the facts in regard to the business of the insured at the time he applied for insurance, or at the time he delivered the certificate and accepted the premium. Modern Brotherhood v. Phelps, 142 Ky. 544, 134 S. W. 892; McGurk v. Life Ins. Co., 56 Conn. 528, 16 Atl. 263, 1 L. R. A. 563.

[7] If at the time of the issuance of the

policy it was known to Zizik, the clerk, that Joseph Wernette was engaged in the business of a saloon keeper or was selling liquors at retail, appellant would be estopped from asserting the invalidity of the policy. Joyce on Ins. § 515; Western Assurance Co. v. Hillyer, 167 S. W. 816. This may be true although it is provided in the policy that the agent may not waive its conditions. The rules enunciated apply to fraternal benefit societies. Joyce on Ins. § 515i; Newman v. Benefit Ass'n, 76 Iowa, 56, 40 N. W. 87, 1 L. R. A. 659, 14 Am. St. Rep. 196; Modern Woodmen v. Breckenridge, 75 Kan. 373, 89 Pac. 661, 10 L. R. A. (N. S.) 136, 12 Ann. Cas. 636; Modern Woodmen v. Trust Co., 25 Colo. App. 26, 136 Pac. 806.

[8] However, in order to bind appellant, and estop it from claiming a forfeiture of the certificate, knowledge of the facts must be brought home to the clerk, and such knowledge cannot be presumed or inferred, but must have been actually known by the clerk. Appellant was under no obligation to go into an investigation of the representations of insured, but was authorized to act upon the presumption that they were true. The doctrine of estoppel "rests upon the ground that facts made known to an agent of the company, when acting as such, are in law known to the principal, and that a fraud would be perpetrated if an insurance company, through its agent, was allowed to deliver its policy and accept the premium with knowledge of facts which under its provisions rendered it void ab initio, and thereafter assert its invalidity." In re Millers' Ins. Co., 97 Minn. 98, 106 N. W. 485, 4 L. R. A. (N. S.) 231, 7 Ann. Cas. 1144; Virginia Ins. Co. v. Cummings, 78 S. W. 716.

[9] The Kentucky case of Life Ins. Co. v. Hughes, 110 Ky. 26, 60 S. W. 850, is based on facts totally different from those found in this case. No decision, we think, can be found that holds that each partner is not engaged in the saloon business and in retailing intoxicating liquors under similar facts to those in this case. No one has been shown to have expressed such an opinion except Zizik, whose authority to construe such policies is not as well established as might be desired if there should be any inclination to be guided by it. Mr. Zizik's offhand opinion

216 S.W.—43

that a "saloon keeper is the man behind the bar, the man going behind the bar and dealing out the drinks," is novel, if not binding on any one.

[10, 11] If the policy was obtained by false representations, under the very terms of the contract it was void ab initio, and was never "in force" within the purview of the clause of the policy as to its being incontestable after five years. However, there was no incontestable clause in effect when the certificate was issued, nor for seven years thereafter, when certificates were made incontestable, except when the death of the insured was caused by the beneficiary, or the hands of justice, or from drinking intoxicating liquors, or use of opiates, cocaine, chloral, or narcotics or poison, or when death occurs in war, except in defense of the United States. That provision lasted for only two years, and on October 1, 1917, another clause was enacted which added to the other grounds for contest when the insured shall die while "engaged in a hazardous or prohibited occupation." The insured was bound under his contracts by the laws made by appellant, and his certificate was not rendered incontestable under the law of 1915, because it was not in existence for a sufficient length of time and had no retroactive force or effect. His occupation was one prohibited, and under the law of 1917, the certificate could not become incontestable.

[12] There is no law of this state requiring fraternal benefit societies to put incontestable clauses in their certificates as is demanded in article 4741, Revised Statutes, of life, health, and accident insurance companies, and consequently clauses of that kind in certificates of mutual benefit organizations derive their authority, not from the statute, but from the contract. It follows that decisions made in ordinary insurance cases as to the incontestable clause based on the statute such as that in Southern Union Life Ins. Co. v. White, 188 S. W. 266, can only be looked to as to such matters as that even fraud, after the incontestable period has been perfected, will not invalidate a policy.

The judgment is reversed, and the cause remanded.

MOURSUND, J., not sitting in this case.