## SOVEREIGN CAMP, WOODMEN OF THE WORLD, v. NASH. (No. 6358.)

(Court of Civil Appeals of Texas. San Antonio. March 17, 1920. Rehearing Denied April 14, 1920.)

**1. Insurance ⬦755(2)—Provision in fraternal by-laws that no general officer has power of waiver invalid.**

Provision in the by-laws of a fraternal insurer that no officer of the Sovereign Camp should have power of waiver is not authorized by Rev. St. 1911, art. 4847, providing that the constitution and laws of a benefit insurance society may provide that no subordinate body or its officers shall have the power to waive any provisions.

**2. Insurance ⬦724(2)—Notice to medical examiner is notice to insurer.**

Where a medical examiner was notified that the applicant had suffered from influenza, and such fact was noted in the report he made to the body having general authority over fraternal insurer, *held*, that the insurer was charged with knowledge of that fact, and cannot rely on the applicant's statement that he had not suffered from disease, etc.

**3. Insurance ⬦724(3)—Insurer, with knowledge of facts, estopped to rely on false representations.**

An insurer is estopped to rely on false statements by insured as to his health, where report of medical examiner advised the insurer of true facts.

**4. Insurance ⬦819(2) — Finding that applicant was in good health held warranted.**

In an action on a benefit certificate, the jury's finding that insured was in good health at the time of the application and at the receipt of the certificate *held* warranted.

Appeal from Bexar County Court; John H. Clark, Judge.

Action by Mrs. Marion E. B. Nash against the Sovereign Camp, Woodmen of the World.

From a judgment for plaintiff, defendant appeals. Affirmed.

E. D. Henry and Atlas Jones, both of San Antonio, for appellant.

T. H. Ridgeway, of San Antonio, for appellee.

FLY, C. J. Appellee sued appellant to recover $1,000, alleged to be due on an insurance policy on the life of her deceased husband, William T. Nash, issued by appellant. The defense was that deceased had represented, when applying for insurance, that his health was then good, that he had not been sick, and that he had never suffered from consumption, and that there were no indications of disease of the respiratory organs, which representations were untrue. The cause was submitted to a jury on special issues, and on the responses thereto judgment was rendered in favor of appellee for the amount of the policy.

[1, 2] In the application for insurance deceased stated that the present condition of his health was good and that he had had no sickness, and on the opposite side of the application is the certificate of the examination of the applicant by the examining physician of the organization, in which it is stated that there was nothing in the appearance of the applicant indicating tuberculosis and other named diseases; that he had an attack of influenza within the past two years, which lasted for three weeks; that there were no indications of disease of the heart, blood vessels, lungs, pleura, or larynx; that the examination was made on December 13, 1918, in the home of deceased; that he was in fair health; and that the examiner considered the risk good. The medical examiner was ordered to make the examination by E. T. Vineyard, describing himself as "Dist. Mgr." The risk was also recommended by "Daniel Webster, Deputy." It is clear that the application and examination were made at or about the same time, and, while it is stated in the application that the applicant had not been sick, that he disclosed to the examining physician that he had the influenza for three weeks.

The representation in the application could not have deceived appellant, for the report of the medical examiner accompanied it and was necessarily before the home office at the same time, for both application and certificate of examination were on the same paper. Knowledge of the fact that deceased had suffered from an attack of influenza was brought directly home to appellant itself, and it could not have been deceived by any representation on that subject in the application. It is not a question of knowledge obtained by an agent or officer of appellant, but one of appellant itself acting upon knowledge given it by its medical examiner. It knew

that appellant had an attack of influenza of three weeks' duration, and yet it acted and issued the certificate. The district manager, deputy, and medical examiner did not attempt to waive anything, but acted as empowered to do, and communicated the knowledge obtained by them to their principal.

If there was a waiver, it was not done by the subordinate body or its officers, but by the district manager, the medical examiner, and the deputy. The statute provides that the constitution and laws of a benefit insurance society may provide that no subordinate body or its officers shall have the power to waive any provisions of the laws and constitution of the society. Rev. Stats. art. 4847. The provision in the laws of appellant, that no officer of the Sovereign Camp shall have the power of waiver, is not authorized by the statute. Knowledge acquired by the officers of the Sovereign Camp and communicated to their principal would bind it. The Homesteaders v. Stapp, 205 S. W. 743.

If a false representation as to former sickness or present condition was made by deceased, appellant knew it, because the application and medical certificate fully disclosed it, and appellant is not acting in good faith when it seeks to destroy its contract, made with full knowledge of all the facts. It will, in equity and good conscience, be estopped from taking such action. The statute has gone far enough in permitting it to escape from being bound by its subordinates and their officers, and we do not feel disposed to, and will not, hold that it will not be bound by its own officers' acts, or even its own acts. Its medical examiner certified to the condition of deceased, and it must be presumed that he was learned in the medical profession and acted on a personal examination of deceased. That deceased died in two months after the examination would not reflect either on his knowledge or uprightness. The body, so far as human knowledge, skill, and experience may go, may be in excellent condition, and yet in a moment the vital spark may be extinguished as an electric lamp, and nothing but inanimate clay remain.

[3] The rule is well established that, although the answers of the insured may be untrue or incomplete, and this fact under the contract would avoid it, the insurer may by its conduct, or that of its officers, be held to have waived its right, and be estopped from having the policy declared void for misrepresentation or breach of warranty. Bacon, Ben. Soc. & Life Ins. § 427. While the statute permits contracts against waivers by subordinate bodies and their officers, there is no such law as to general officers or agents, and no provision in the constitution of the society against waiver by general officers would have any basis in law.

[4] Appellant attacks the four responses of the jury to the issues submitted to them, as not supported by the evidence. The first was as to whether William T. Nash was in good health when he applied for insurance. He stated that he was in good health, and the medical examiner stated that his health was fair. There was no satisfactory evidence that deceased had ever suffered from consumption or disease of the respiratory organs before signing the application, and the jury had support for finding that he had not so suffered. The evidence of Dr. Shepherd, the only physician who examined deceased before he applied for insurance, except applicant's doctor, was quite unsatisfactory as to the condition of William T. Nash. He saw Nash for the last time on December 8, and made only an outward examination. He did not examine the sputum. Dr. Shepherd admitted that he did not know what was the matter with Nash, but thought he had influenza, "with a possible complication of tuberculosis." However, Dr. Trieble, the medical examiner of appellant, examined Nash on December 13, 1918, and certified to his principal that there were no "indications of disease of the respiratory organs (lungs, pleura, or larynx)." The jury relied on the certificate of appellant's physician.

Appellant contends that there was no testimony that Trieble was the medical examiner of appellant, except the statement of Mrs. Nash. He signed the certificate, and it was acted upon by appellant, and the policy issued, and he must have been the medical examiner who, by the language on the certificate of the doctor, was shown to have been ordered to make the examination by the district manager. When the policy was delivered is not clearly shown, but it appears that it was executed at Omaha, Neb., on December 16, and probably could not have reached San Antonio and been delivered before December 19 or 20, at a time when Mrs. Nash swore that he was up and feeling well. The jury had testimony on which to base a finding that William T. Nash was in good health when the policy was delivered to him.

If Nash was in bad health when the application was made, appellant knew it, and was willing to accept the risk, and did accept it. The language used by this court in regard to estoppel as to fraternal benefit societies in the cases of Grayson v. Grand Temple, 171 S. W. 489, and W. O. W. v. Wernette, 216 S. W. 669, should have been confined to acts of waiver or those creating estoppel on the part of subordinate bodies and their officers, as has been done herein. Under the facts of those cases the opinions were correct. The rulings as to estoppel in each case were called for by the contentions of the appellant and were not obiter dictum. If they "render fraternal life insurance very unsafe," as con-

tended by appellee, the Legislature should be appealed to, and not this court.

The judgment is affirmed.

MOURSUND, J., did not sit in this case.