## SOVEREIGN CAMP, WOODMEN OF THE WORLD, v. NIGH.   (No. 6421.)

(Court of Civil Appeals of Texas.   San Antonio.   April 30, 1920.   Rehearing Denied June 30, 1920.)

1. Insurance ⊜745—Policy of fraternal benefit society not incontestable, unless so provided in contract.

Policy issued by fraternal benefit society was not incontestable, unless so provided by the contract itself, since Rev. St. 1911, art. 4741, requiring policies to contain an incontestable clause, is not applicable to policy of a fraternal benefit society.

2. Insurance ⊜688—Statute as to contents of policy not applicable to fraternal benefit societies.

Fraternal benefit societies are not within the purview of Rev. St. 1911, art. 4741, prescribing the provisions to be contained in insurance policy.

3. Estoppel ⊜52—"Waiver" and "estoppel" distinguished.

The terms "waiver" and "estoppel," though often inaccurately used as synonyms, are not synonymous; a "waiver" being the relinquishment of some right by word or conduct, and an "estoppel" arising from the perpetration of a wrong or a fraud which has misled another to his hurt or injury and from which justice and equity will prevent him from receiving profit or benefit.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Estoppel; Waiver.]

4. Insurance ⊜718—Member of fraternal society chargeable with knowledge of contract and constitution and by-laws.

Member of a fraternal insurance society was chargeable with the full knowledge of the terms of his contract, of which the constitution and laws of the society were a part.

5. Insurance ⊜755(3)—Forfeiture not prevented by receipt of premiums without knowledge of change of occupation.

Where laws of fraternal benefit society required member to give the society 30 days' notice and to pay increased assessment on his engaging in any of specified hazardous occupations, a member who entered into one of the hazardous occupations and continued working therein for three months, without giving the necessary notice of the change in occupation or paying the increased assessment, and without such fact being known by the society or any officer, forfeited the contract of insurance, notwithstanding acceptance of assessments by the clerk during such three months.

Error from District Court, Menard County; M. T. Stubbs, Judge.

Suit by Mrs. Stella Amanda Nigh against the Sovereign Camp, Woodmen of the World. Judgment for plaintiff, and defendant brings error. Reversed, and judgment of nonsuit rendered.

De E. Bradshaw, of Omaha, Neb., and Blanks, Collins & Jackson, of San Angelo, for plaintiff in error.

Flack & Flack, of Menard, for defendant in error.

FLY, C. J. This is a suit instituted by the defendant in error, who for brevity will be described as the beneficiary, against plaintiff in error, who will be called the insurer, to recover the sum of $2,000 insurance on the life of S. R. Nigh, the deceased husband of the beneficiary, and $100, the monument fund. The only defense presented to the claim was that the deceased husband had insured as a farmer and had changed his occupation to that of a copper miner, without notice to the insurer and without the payment of an increased assessment of 60 cents a month for five months, aggregating the sum of $3. The cause was tried without a jury and judgment rendered in favor of the beneficiary for her claim, less $3 to cover the extra 60 cents a month for five months.

The facts show that S. R. Nigh obtained insurance in the fraternal benefit association of the insurer for $2,000 and the promise of a $100 monument, and for many years paid every assessment as it accrued. In the summer of 1918 he went to Arizona and obtained employment in a copper mine, and continued to pay the same amount as before, up to the time of his death, which occurred about five months after he entered the mine, that is, in October, 1918. The clerk of the local camp did not receive notice and did not know that deceased had left his farm and gone into the work of a copper miner. The laws of the insurer required the monthly payment of 30 cents extra on each $1,000 of insurance upon a change from a farm to the copper mine; work in the latter being described as hazardous. The clerk, not knowing that S. R. Nigh had gone into the copper mining work, for five months received the usual monthly payments.

---

[1, 2] Under the terms of the contract, which alone can make a policy incontestable, so far as fraternal benefit societies are concerned, as they are not within the purview of article 4741, Revised Statutes, the policy was not incontestable, as deceased was engaged in a hazardous occupation, as defined by the laws of the insurer. W. O. W. v. Wernette, 216 S. W. 669. That question cannot therefore arise, although it is pleaded in the petition of the beneficiary.

[3] Under the statute law and the rule or regulation adopted by the insurer, no officer of any subordinate camp could waive any of the provisions of its constitution or laws, and this court has held in several instances that such rule is valid and binding. Grayson v. Grand Temple, 171 S. W. 489; W. O. W. v. Wernette, 216 S. W. 669; W. O. W. v. Nash, 220 S. W. 235. However, while the terms "waiver" and "estoppel" are often inaccurately used as synonymous, there is a marked distinction between the terms and the facts which are required to establish one or the other. One reason for the confusion in the use of the words is that a valid and complete waiver may be said to effectually estop one party from a claim against the other. A waiver is the relinquishment of some right by word or conduct, while an estoppel arises from the perpetration of a wrong or a fraud which has misled another to his hurt or injury, and from which justice and equity would prevent him from receiving profit or benefit. It is such conduct as to which equity says, "He who hath committed iniquity shall not have equity." Estoppel quite uniformly is held to apply only to matters of fact, and every case must depend upon its own peculiar circumstances.

We are unable to comprehend how an estoppel can be made to arise from acts done by some person denied authority to waive by law and the terms of the contract, but it has been done, it appears, in the case of W. O. W. v. Putnam, 206 S. W. 970, the opinion in which case was written by a special judge for the Court of Civil Appeals at Beaumont. The decision met the approval of the Supreme Court. In that case the dead member was a railroad clerk when insured, but afterwards entered into the retail liquor business. The clerk of the local camp, after the change of business, still collected the same amounts as before, not demanding any increase in the assessments. The clerk went into the barroom of the insured to collect from him the dues or assessments, and this was kept up for years. Under these circumstances, it was held that, while there was no waiver, the facts created an estoppel. While not committing this court to the correctness of that decision, it can readily be distinguished in its facts from the facts of this case.

[4] In this case no notice was given by the insured or beneficiary for three months after he had gone into the occupation of a miner. The clerk had no notice of any kind, and only had heard, as any member of a small community would hear, that one or more of its members had gone to Arizona to enter the business of a miner. He could not have known that Nigh had obtained employment after he reached Arizona, because Nigh nor any one else notified him until September 10, 1918, when the beneficiary herein told him in a conversation that her husband was working in a mine in Arizona. That notice should have been given in June. No act of the clerk in June, July, or August prevented Nigh from giving that notice or misled him in any way. He knew that if he went into mining he should give notice of the fact and pay an increased assessment, for the law charges him with full knowledge of the terms of his contract, of which the constitution and laws of the insurer were a part.

The laws of the insurer require a notice of 30 days when the insured engages in any of the hazardous occupations named in the laws, and the payment of an extra 30 cents on each $1,000 of insurance in each month, and S. R. Nigh did not comply with either of those requirements. The insurer did not receive any notice of any kind from the insured for three months after he had entered into the hazardous occupation, and when the notice was given by Mrs. Nigh on September 10, 1918, the policy had already been forfeited by the failure to give notice and pay the increased assessment. Up to that time the clerk had no actual notice of the change to a hazardous occupation, and the notice given by Mrs. Nigh did not indicate that the mining into which her husband had entered was one classified as hazardous. Mrs. Nigh gave that notice in September after the assessment for that month was due, and the payment of that assessment could not have been affected by the notice and it was the last assessment paid.

[5] The insured was charged with the knowledge that he was entering a hazardous occupation, and nothing was done by the camp clerk to cause him to believe that it was not so considered by the insurer. He acted on his own initiative, failed to give the required notice, and forfeited the contract of insurance.

The judgment will be reversed, and judgment rendered that the beneficiary, Mrs. Nigh, take nothing by her suit, and pay all costs in this behalf incurred in this court and the trial court.

MOURSUND, J., enters his disqualification in this case.