**TENNISON v. HOME BENEFIT ASS'N OF HILL COUNTY et al. (No. 165.)**

(Court of Civil Appeals of Texas. Waco. March 19, 1925. Rehearing Denied April 30, 1925.)

**1. Insurance ☞718—Duty of assured to acquaint herself with by-laws made part of certificate.**

Where the constitution and by-laws of the Home Benefit Association, organized under provisions of Vernon's Ann. Civ. St. Supp. 1922, art. 4859, were made part of insurance contract, it was duty of assured to acquaint herself with their provisions, and to know what was required of her to keep her certificate in good standing, and, in determining nature of contract between assured and association, court can look only to certificate, constitution, and by-laws.

**2. Insurance ☞733 — Assessment of death benefit by secretary held legal in view of provisions of constitution and by-laws.**

In action by beneficiary on certificate of insurance issued by Home Benefit Association, organized under Vernon's Ann. Civ. St. Supp. 1922, art. 4859, in which defendant alleged forfeiture of benefits for nonpayment of assessments, held, that plaintiff's contention that assessments were illegal because not levied by board of directors was without merit, in view of provisions in constitution and by-laws, which were part of certificate, authorizing secretary to call an assessment after each death loss was approved, which, in effect, was the same as if board of directors had made assessment itself.

**3. Insurance ☞734—Contention that association had sufficient funds paid by assured to cover delinquent assessment held without merit.**

In action by beneficiary on certificate of insurance issued by Home Benefit Association, organized under Vernon's Ann. Civ. St. Supp. 1922, art. 4859, in which defendant alleged forfeiture of benefits for nonpayment of assessments, plaintiff's contention that insurer had in its hands sufficient funds to cover delinquent assessments because of payment by assured of two annual dues held without merit, in view of provisions in constitution and by-laws, charging assured with notice that annual dues were no part of mortuary fund, and that such fund would be exhausted when next death claim was approved.

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Action by George Tennison, guardian of the estate of John G. Wade, against the Home Benefit Association of Hill County and another. Judgment for defendants, and plaintiff appeals. Affirmed.

Frazier & Averitte, of Hillsboro, for appellant.

Morrow & Stollenwerck and T. H. Jackson, all of Hillsboro, for appellees.

STANFORD, J. The Home Benefit Association of Hill County, Tex., an unincorporated local mutual aid association, on April 16, 1920, issued to Rosalie Wade a certificate of insurance in said order, as follows:

"Class A.

"Policy No. 926.          Age 21.

"Series One.

"Home Benefit Association of Hill County, Texas.

"Hillsboro, Texas, April 16, 1920.

"This certifies that Rosalie Wade is this day admitted a member of this association, conditioned:

"First. She agrees to pay assessments, levied by the directors, of $1 upon the death of each

member and 10 cents for expenses, total $1.10 each member, within 10 days from call, and agrees further that failure to pay any assessment so levied, within 10 days from date of call, shall forfeit all claims as a member of this association, and she agrees that the constitution and by-laws of this association shall be a part of this contract.

"Second. She agrees to a stipulation that this certificate shall only bind the association to pay to John G. Wade (husband), the sum of one dollar for each member in good standing at the time of her death, and should two or more deaths occur between assessments, the beneficiary of each, in priority as fixed by date of death, shall be entitled to the amount collected on each succeeding assessment, one assessment for each death, said amount not to exceed $1,-000, should she die in good standing in the association.

"[Signed]   Will I. Satterfield, President.
"Attest:   T. W. Mitchell, Secretary.

"I accept this certificate, subject to conditions above set forth.

"Annual dues, $1.00, payable November 15th of each year."

The assured, Rosalie Wade, died May 20, 1922. This suit was filed by John G. Wade, husband of Rosalie Wade, and beneficiary in said certificate, against the Home Benefit Association of Hill County and Will I. Satterfield, its president, for $1,000, the amount claimed to be due on said certificate. The said John G. Wade having been adjudged a non compos mentis, George Tennison was appointed guardian of his estate, and as such guardian was substituted as plaintiff in said cause. The trial court submitted the case to the jury on the following special issues:

"(1) Did Rosalie Wade pay the defendant company assessment No. 41 levied by the secretary of said company? Answer 'Yes' or 'No.' " To which the jury answered: "No."

"(2) Did the defendant company notify Rosalie Wade of assessment No. 42 levied by the secretary of said company? Answer 'Yes' or 'No.' " To which the jury answered: "Yes."

The trial court entered judgment for defendants, appellees herein. Other facts of the case will be stated in our consideration of the assignments of error.

## Opinion.

By several assignments of error, appellant contends that assessments Nos. 41 and 42 were not levied by the board of directors of appellee, the Home Mutual Benefit Association, and by reason thereof said assessments were illegal, and no forfeiture could occur by reason of their nonpayment. Home benefit associations, operating upon the assessment plan, are organized in this state under the provisions of article 4859, Vernon's Annotated Civil Statutes, 1922 Supplement. Such organizations are different from most fraternal organizations, in that they do not operate through the lodge system—a grand lodge and subordinate lodges—in fact, they have no lodges. Their plan of organization and operation is not complicated—intended to be understood by those not learned in the law. They have no salaried officers, unless it be the secretary, who must necessarily give a large part of his time to the promotion of the interests of a local organization. They are not organized for profit, but for the sole benefit of their members. They are also what their name implies—home benefit associations. Each organization is local in its operation, and is prohibited by statute from being directly or indirectly connected, federated, or associated with any other such organization. Each local mutual aid association is subject only to its own constitution and by-laws, prepared and adopted by its own board of directors. It depends exclusively upon the prompt payment of the assessments to satisfy the certificate of deceased members, and only by the prompt payment of these assessments, at the time and in the manner provided by the by-laws and constitution, can it maintain its solvency and carry out the worthy purposes for which it was organized. The only way it has of enforcing payment of assessments is by providing in its contracts for forfeiture of benefits for nonpayment of assessments.

[1] The constitution and by-laws of the association is made a part of the insurance contract, and it was the duty of the assured to acquaint herself with their provisions, and to know what was required of her to keep her certificate in good standing. So, in determining what the contract was between the assured and the association, we can look only to the certificate and the constitution and by-laws. Splawn v. Chew, 60 Tex. 534; Pledger v. Business Men's Ass'n (Tex. Civ. App.) 198 S. W. 810; United Moderns v. Colligan, 34 Tex. Civ. App. 173, 77 S. W. 1032; Brotherhood of Railway Trainmen v. Cook (Tex. Civ. App.) 221 S. W. 1049; Sovereign Camp W. O. W. v. Nigh (Tex. Civ. App.) 223 S. W. 291. And the certificates and constitution and by-laws of different fraternal and local mutual aid associations differ to such an extent that reported cases are of but little aid. Hemphill County Protective Ass'n v. Richardson (Tex. Civ. App.) 264 S. W. 294; 29 Cyc. p. 98.

[2] What was the intention of the appellee association in this case, as indicated by the certificate and constitution and by-laws, with reference to levying and collecting assessments? This is the sole question to be considered in determining the matters raised by these assignments. The constitution provides:

"The membership fee shall be $5 * * * to be used as follows: $1 shall be placed in the mortuary fund, 15 cents to be paid the medical director, and $3.85 to be paid to the secretary for expense of securing application."

And further:

"No certificate of membership shall be issued until twenty-five applications have been received, together with a membership fee of $5 each," applied as above indicated. "When a member dies, his beneficiary shall be paid $1 for each member in good standing, * * * and an assessment of $1 shall be made against each member * * * to provide a mortuary fund for the next death. Should any member fail to pay an assessment on or before ten days from date of call, he or she shall then cease to be a member."

The by-laws provide:

"On-the death of any member who is in good standing, the beneficiary named in the certificate shall be paid the sum due on said certificate, provided the proper death proofs are made, satisfactory to the president, secretary, and treasurer."

Also:

"After the death of a member has been proved up, the secretary shall mail a notice to each member, requiring the payment of $1 * * * to be used in the payment of the next death loss."

Also:

"The secretary, with the president, shall sign all certificates of membership and countersign all checks of the association. * * *. The names and addresses of all members shall be kept by the secretary in his book, and it shall be his duty to notify each member * * * of all assessments when they are due. The meeting of the board of directors shall be held annually, on or before March 1st, at Hillsboro, Texas. The secretary shall make an annual report at the meeting of the board of directors on or before March 1st. It shall show the number of members in the association, the amount of money received during the year and from what source received, the amount of money paid out during the year and for what it is paid, and the amount then on hand. This report shall bear the attestation of the treasurer as to the amount of money that has been handled."

It will be observed from the above provisions that the board of directors provided that the president, the secretary, and the treasurer shall pass on the sufficiency of proofs of death. It will be observed further, that the board of directors, by the constitution and by-laws, have fixed the amount of the mortuary assessments at $1 each, and have also definitely determined that one such assessment shall be paid on the death of each member, provided the proofs of death of such member are duly approved by the president, secretary, and treasurer, and have definitely provided that said assessment shall become due as soon as said proofs are made, and that the secretary shall at once give notice to all members to pay said assessment of $1, in order to create a mortuary fund to pay the next death claim. It will thus be seen that the constitution and by-laws clearly provide that there shall be in the hands of the treasurer at all times one assessment of $1 per member to meet the next death claim, and to accomplish this purpose, as soon as a member dies and proper proofs of such death are made, satisfactory to the president, secretary, and treasurer, the secretary is directed to send notice to each member, requiring the payment of $1, to be used in payment of the next death loss, and the adoption of the constitution and by-laws being the act of the board of directors, it becomes apparent that said assessment, called by the secretary after each death loss is approved, is an assessment levied by the board of directors.. If the board of directors had adopted a resolution at their annual meeting, providing that each member of the association should pay an assessment of $1 into the mortuary fund on the death of each member and the approval of the proofs of such death, and directed the secretary to send his notices to each member to collect said assessment, then there would be no room for contention that the assessments were not levied by the board of directors, and the fact that the board of directors so provided in the constitution and by-laws, instead of by resolution, is immaterial—the levying of such assessment is no less the action of the board of directors.

It is wholly unnecessary for the board of directors to meet after each death of a member and go through the formality of assessing each member $1 for the benefit of the mortuary fund, and direct the secretary to send out notices to collect same, when they have already, by the provisions of the constitution and by-laws, made said assessment and so provided for its collection. The board of directors had the right, as they did, in the constitution and by-laws adopted by them, to levy assessments to mature in the future and to mature'upon contingencies in said constitution and by-laws specified, and their acts in so doing were just as legal and just as much their acts as if they had been called together and made assessments after each death. Assessments Nos. 41 and 42 were duly and legally made by the board of directors. We overrule all of appellant's assignments contending these assessments were not legally made.

[3] Under other assignments, appellant contends that, as the assured paid one mortuary assessment in advance when she was admitted a member, and during the two years of her membership paid two annual dues of $1 each, and all assessments levied against her except Nos. 41 and 42, the insurer had in its hands a sufficient amount of funds paid in by the assured to cover these two assessments, and it was the duty of the insurer to apply said funds to the payment of assessments Nos. 41 and 42. As stated above, the assured was charged with notice of the provisions of her contract, as contain-

ed in her certificate of membership and the constitution and by-laws of the association. Having such knowledge, she knew at the time she was admitted a member, her certificate being No. 926, that each of the other members had paid into the mortuary fund $1, and that the treasurer then had in the mortuary fund $1 for each member so paid in, or a total of $925 being held in readiness to meet the next death claim of a member. The assured also knew that $1 of the $5 she paid when she was admitted was added to the mortuary fund in the hands of the treasurer, thus placing her on the same basis as all other members, and that this was only just and right to all other members. Assured also knew that the board of directors had, in the constitution and by-laws, provided that as soon as a death occurred and proofs of such death were furnished, satisfactory to the president, secretary and treasurer, that another mortuary assessment became due, and that it was the duty of the secretary to so notify her, and that it was her duty to pay it, in order to provide a mortuary fund to meet the next death claim; and she knew this was the plan on which the association was conducted. Assured was also chargeable with notice, for it is so stated in the constitution and by-laws, that death claims could be paid only out of the mortuary fund in the hands of the treasurer, and also that the annual dues of $1 were no part of the mortuary fund, and did not go into the hands of the treasurer, and that such dues could not legally be placed in the mortuary fund.

When the assured received notice that assessment No. 41 was due, she knew a death claim had been approved, as provided by the constitution and by-laws, and knew when paid the money in the mortuary fund would be exhausted, and that it was necessary to pay assessment 41 in order to create a mortuary fund to meet the next death claim. Under the provisions of the constitution and by-laws, the assured had no right to ask the association to return to her the annual dues she had paid, or to place same to her credit in the mortuary fund, or elsewhere. We do not think the cases cited by appellant are applicable to the facts here presented. There is no ground for contention that the association was indebted to the assured in any sum whatever. Smith et ux. v. Covenant Mutual Benefit Ass'n, 16 Tex. Civ. App. 593, 43 S. W. 819; Menard v. Society, 63 Conn. 172, 27 A. 1115; Cyc. vol. 29, p. 98. By the express terms of the constitution and by-laws, there is an agreement to pay the dues as a member of the association, and, in addition thereto, to pay the assessments in order to pay death claims  We overrule appellant's assignments presenting the questions here discussed.

We have carefully considered all of appellant's assignments, and, finding no error, the judgment of the trial court is in all things affirmed.