Modern Woodmen v. Breckenridge.

THE MODERN WOODMEN OF AMERICA V. MYRTLE
BRECKENRIDGE *et al.*
No. 14,932   (89 Pac. 661.)

SYLLABUS BY THE COURT.

1. FRATERNAL INSURANCE—*Benefit Certificate Providing for
Forfeiture for Intemperance Held Self-executing.* A condition in a fraternal benefit certificate that "if the member
. . . shall . . . become so far intemperate in the use
of alcoholic drinks, or the use of drugs, to such an extent
as to permanently impair his health, or to produce delirium
tremens, . . . then this certificate shall be null and void
and of no effect, and all moneys which shall have been paid,
and all rights and benefits which may have accrued on account of this certificate shall be absolutely forfeited," is
self-executing.

2. ——— *Knowledge that Insured Has Violated By-laws—
Waiver of Forfeiture Clause.* A subordinate lodge of a
mutual benefit association which has the power to discipline
and expel a member for violating the by-laws of the association, possessing knowledge that a member has forfeited
his benefit certificate by violating the by-laws of the association, waives the right of the association to insist upon the
forfeiture by continuing to receive his dues and in all other
respects treating him as a member until his death.

Error from Allen district court; OSCAR FOUST,
judge. Opinion filed March 9, 1907. Affirmed.

*Truman Plantz,* and *McClain & Apt,* for plaintiff in
error.

*Travis Morse,* for defendants in error.

The opinion of the court was delivered by

GREENE, J.: The plaintiffs in this action sought to
recover on a benefit certificate, issued January 2, 1897,
by the Modern Woodmen of America to Thomas E.
Kelly. The case was tried to the court and judgment
rendered in favor of the plaintiffs. The defendant
prosecutes this proceeding in error.

Kelly died February 6, 1905, a member in good

standing upon the records of Iola Camp No. 961 of the Modern Woodmen of America, located at Iola, Kan., the camp of which he originally became a member. Kelly's certificate contained the following conditions:

"If the member holding this certificate shall be expelled by his local camp, or become so far intemperate in the use of alcoholic drinks, or the use of drugs, to such an extent as to permanently impair his health, or to produce delirium tremens, . . . then this certificate shall be null and void and of no effect, and all moneys which shall have been paid, and all rights and benefits which may have accrued on account of this certificate shall be absolutely forfeited."

The by-laws of the association contained similar provisions.

The evidence shows that at least two years before his death Kelly was an habitual and excessive user of intoxicating liquors, to such an extent as to impair his health and produce delirium tremens, and that he died of alcoholic dementia.

The question to be determined arises upon the pleading of the forfeiture proviso in the certificate and the reply thereto that the corporation by its conduct had waived the forfeiture. A mutual benefit association may impose prohibitive conditions in its benefit certificate upon the future conduct of its members, the indulgence of which would impair the health or endanger the life of such members, and we find that the dangers most generally apprehended and guarded against are engaging in the sale of intoxicating liquors, the intemperate use of alcoholic drinks, and the use of drugs to such an extent as permanently to impair the health.

Where such restrictions are inserted in the certificate under conditions that if violated by the member the certificate shall become null and void, and all rights and benefits which may have accrued on account of such certificate shall be forfeited, the provision is self-executing. Courts should construe the plain, unam-

biguous provisions of a benefit certificate the same as they would an agreement between other contracting parties, and give to it the effect intended by the parties. It is evident that it was the intention of both parties to the certificate that the forfeiture clause should have the effect its language plainly indicates; that if the member violated his contract against impairing his health by the continued excessive use of drugs or inducing delirium tremens by a continued excessive use of alcoholic drinks he should forfeit all benefits under the certificate. (*Hogins v. Supreme Council,* 76 Cal. 109, 18 Pac. 125, 9 Am. St. Rep. 173; *Smith v. Knights of Father Mathew,* 36 Mo. App. 184; *Newman v. The Cov. Mut. Ins. Ass'n,* 76 Iowa, 56, 40 N. W. 87, 1 L. R. A. 659, 14 Am. St. Rep. 196; *Supreme Council Royal League v. Moerschbaecher,* 88 Ill. App. 89; *Northwestern, etc., Assn. v. Bodurtha, Gdn.,* 23 Ind. App. 121, 53 N. E. 787, 77 Am. St. Rep. 414.)

In this connection it is well to observe that there is a notable distinction between certificates in which the member agrees that he will not engage in a designated prohibited business or will not impair his health by the use of drugs or intoxicating liquors and those where the provision is that if he does violate such conditions he shall forfeit all benefits under the certificate. In the first instance a forfeiture follows only after trial and expulsion, while in the latter the forfeiture follows a violation of the conditions. (*Independent Order of Foresters v. Zak,* 136 Ill. 185, 26 N. E. 593, 29 Am. St. Rep. 318; *Steinert v. United Brotherhood of Carpenters & Joiners,* 91 Minn. 189, 97 N. W. 668; 2 Bacon, Ben. Soc. & Life Ins., 3d ed., § 326a.)

While the cases do not agree as to the violation of what conditions in the certificate will *ipso facto* forfeit all benefits, largely because of the different wordings of the provisions in different certificates, which have not in all cases been closely observed and distinguished, it may be said that if the certificate itself provides that the violation of some particular provision works

a forfeiture the courts have generally held that upon the violation of such condition no recovery can be had.

A more difficult question is the claimed waiver on the part of the association to rely on the forfeiture in this case. The by-laws of the association provide that the local camp or executive council shall have original jurisdiction for the disciplining and expulsion of members for misconduct. Among the offenses for the commission of which a member may be tried and expelled by the local camp is the excessive use of intoxicating liquors. The by-laws provide:

"The consul shall preside at all meetings of the local camp and shall call all special meetings when necessary or legally requested so to do. He shall communicate the regular and semiannual passwords, appoint all committees not otherwise provided for, decide all questions of law and order, subject to appeal to the head consul. He shall act as judge of all elections. He shall sign all orders on the banker before payment shall be made thereof, and shall perform all other duties reasonably necessary and required by the laws of this society.

"Any member of the society having personal knowledge of, or who shall be reliably informed of, the commission of any offense or violation of the laws of the society by a member thereof, shall make complaint in writing to the consul of the camp having jurisdiction thereof, as provided in the preceding section, which complaint shall be subscribed by the person making the accusation, and shall set forth with reasonable certainty the wrongful acts of which the accused is charged. The complaint shall be immediately referred to the inquiry committee; provided, however, that if the complaint is against the consul it shall be made to the adviser, who shall refer it to the inquiry committee."

It is further provided that the consul, adviser, and banker, or two of them, shall immediately, upon the presentation of a complaint to the consul, appoint an inquiry committee of three beneficiary members of the camp, who shall proceed without delay to investigate

the matter, and if they find just grounds therefor they shall prefer charges against the accused.

The claimed waiver is based upon the knowledge of the local camp that Thomas E. Kelly was addicted to the habitual and excessive use of intoxicating liquors to such an extent as to impair his health, and that notwithstanding such knowledge the camp continued to accept from him his dues and remitted them to the head camp until his death.

The evidence tending to show that the local camp had knowledge of Kelly's habits was that given by C. C. McCarty, who testified that he was consul of Iola camp from January, 1905, to the following June; that he became acquainted with Kelly's habits about two years before the date of the trial of this cause, which commenced February 14, 1906, and that during the last year of Kelly's life he had seen him intoxicated about a dozen times. This covered all the time that McCarty was consul.

The by-laws do not require that the notice to the consul of the improper conduct of a member shall be presented to the camp or to the consul at a meeting of the camp. It may be presented to the consul at any place or time. Its purpose is to bring to the knowledge of the camp, through the consul, the fact that some member is violating the conditions of his certificate or the by-laws of the association, that the consul may take the necessary steps to subject him to discipline, and, if necessary, expel him from membership. The consul being the presiding officer of the camp and the person designated by the by-law to whom such notice shall be given for the association, notice to him is notice to the camp over which he presides.

No special importance should be attached to the manner in which notice shall be conveyed to the consul. When it comes to his knowledge that one of the members has committed an offense it is made his duty to act for the camp in the manner directed by the by-

laws. If while consul he was present and saw a member commit an offense or violate the provisions of the by-laws his own observation would be as effective to convey knowledge to him of such acts as the written statement of another member based upon observation or information, and his duty to act would be equally imperative. The personal knowledge of the consul, from observation, that the member was habitually and continuously using intoxicating liquors as a beverage to such an extent as to impair his health must be held to be the knowledge of the camp which he represents.

The local camp is the agent of the association to receive applications for membership, to pass upon the qualifications of the applicants, to admit or reject them, to receive and remit dues, to investigate the conduct of a member, and, if it be found that he has violated any of the by-laws or the conditions of his certificate, to expel him from the order. For the offense committed by Kelly he subjected himself to expulsion at the option of the camp. Instead, however, of applying the remedy which might have been invoked, and expelling the member, the camp, through its proper officer, continued to accept and remit the member's dues. These acts were a waiver of the delict of the member by the camp, and an estoppel on the part of the association to plead such delict. In *Order of Foresters v. Schweitzer,* 171 Ill. 325, 49 N. E. 506, it was held:

"The relation between a subordinate lodge of a benefit society and the principal lodge is that of agency, and where forfeiture of the certificate of a member of the subordinate lodge is sought it may be shown in defense that the subordinate lodge, with knowledge of the alleged cause of forfeiture, treated the insurance as in force, receiving dues and paying them over to the principal lodge." (Syllabus.)

In the case of the *Supreme Lodge K. of H. v. Davis,* 26 Colo. 252, 58 Pac. 595, is was said:

"In a mutual benevolent order composed of a su-

preme lodge and subordinate lodges, an officer of a subordinate lodge charged with the duty of notifying the members of assessments made by the supreme lodge for the purpose of paying insurance certificates of deceased members, and of collecting and forwarding to the supreme lodge such assessments, is an agent of the supreme lodge, notwithstanding a rule or by-law of the order recites that such officer in collecting and ·forwarding assessments shall be the agent of the members of the subordinate lodge, and the supreme lodge is charged with all knowledge possessed by the agent in making the collection." (Syllabus.)

In the case of *Modern Woodmen of America v. Lane,* 62 Neb. 89, 86 N. W. 943, it was held:

"The recognition of the continued validity of a certificate or policy, with knowledge of facts entailing a forfeiture, is a waiver of the forfeiture as a matter of law, and it is not necessary that there be a new agreement or the elements of an estoppel." (Syllabus.)

In the case of *Modern Woodmen of America v. Colman,* 68 Neb. 660, 94 N. W. 814, 96 N. W. 154, it was held:

"A forfeiture incurred by the holder of a life-insurance policy or contract is waived if the company, with knowledge of the facts, subsequently collects premiums, ·dues or assessments on account of the contract, and retains them without objection until after the death of the insured." (Syllabus.)

To the same effect are *Hoffman v. Supreme Council of American Legion of Honor,* 35 Fed. 252, and *McDonald v. Chosen Friends,* 78 Cal. 49, 20 Pac. 41.

It is contended, however, that the following by-law prohibits the local camp from waiving any of the provisions of the by-laws:

"No local camp nor any of the officers thereof shall have the right or power to waive any of the provisions ·of the by-laws of this society."

This has reference only to contractual waivers, and has no application to a waiver by operation of law resulting from the subsequent acts of the camp.

Forfeitures are not favored in law, and certainly a semi-benevolent association, such as defendant claims to be, should not be encouraged to rely upon a forfeiture, and the court is justified in laying its hand upon any act of the association showing an intention to waive a forfeiture. The camp, with knowledge of Kelly's misconduct, continued for more than a year to receive and remit his dues, and should not now be heard to say, after his death, and after it has collected and appropriated to itself all that it was possible to get from him, that the benefit certificate had been forfeited.

The judgment is affirmed.