HOMANN *v.* ALLGEMEINER ARBEITER BUND OF MICHIGAN.

INSURANCE—PREMIUMS—NON-PAYMENT—WAIVER OF BREACH—TERMINATION OF POLICY.

> The constitution of defendant, a mutual benefit association, provided that members suspended should not be entitled to any assistance during the period of suspension and that dues were payable in advance; that in case of non-payment within a month after they were due the insured should be suspended from all benefits except insurance and that upon the lapse of another month he should be expelled and that the secretary should notify him eight days before action was taken. It also appeared that the insured had been in arrears for a considerable period of time but that his premiums were received without objection when they were forwarded to the society. There was evidence of the sending of a postal card notifying decedent of a special assessment levied by the association after the alleged date of expulsion; numerous other members of the society were shown to have been frequently in default; *held*, that defendant waived the effect of its constitution requiring the expulsion of the member and *held*, that the action of the society in interpreting the by-laws by conduct was to establish that the by-laws were not intended to be self-executing.

Error to Manistee; Withey, J. Submitted November 11, 1914. (Docket No. 13.) Decided March 17, 1915.

Assumpsit by Barbara Homann against the Allgemeiner Arbeiter Bund of the State of Michigan upon a certificate of insurance. Judgment for plaintiff on a directed verdict. Defendant brings error. Affirmed.

*Zimmer & Chedester,* for appellant.

*Smurthwaite & Bigelow (Max E. Neal,* of counsel), for appellee.

MOORE, J. The defendant is a mutual benefit life insurance society with local societies in various cities; one of them being at Manistee, where this action arose. The plaintiff's husband, Fred Homann, became a member of the local society at Manistee on the 20th day of April, 1890, at which time there was issued to him a death benefit certificate which provided that at the time of his death the sum of $500 would be paid to the beneficiary named in the certificate. He died on the 24th day of February, 1914. Barbara Homann, as beneficiary, brought this suit. After all the testimony was in, the circuit judge directed a verdict in favor of the plaintiff in the sum of $500. The case is brought here by writ of error.

There are many assignments of error, but most of them are abandoned.

Counsel say in the brief:

"Although we incorporated several assignments of error in the record, we believe that the question to be submitted to this court is * * * whether or not the court was justified in directing a verdict for the plaintiff, or should have submitted the case under proper instructions to the jury. * * * The question is whether or not the defendant, by its conduct in permitting the deceased to pay at other times, waived the necessity of a strict compliance of the contract; or so conducted itself in its course of dealings with the deceased while he was a member, as would justly and fairly lead the deceased, as a reasonable man, to believe that he might become in arrears in the payment of his dues, as he did in this case for a period of four months. * * * It was a question for a jury, as reasonable men, to consider what defendant intended and what its conduct, as shown by the evidence in this case toward the deceased while a member, would lead a reasonable man to believe in reference to it. If the defendant by its conduct led the deceased, as a reasonable and prudent business man, to believe that he could make payments two, three, or four months after the time prescribed by its constitution and by-laws, and after they had become due, then it could not turn around and say to the deceased, Fred

Homann, that he did not pay in time; but we submit that it was a question of fact on the evidence in this case to have been submitted to the jury."

Article 8 of the constitution of the Allgemeiner Arbeiter Bund, section 39—C, reads:

"A member who is suspended in the society belonging to the Bund is not entitled to any benefits or any other assistance from the Bund during the period of his suspension."

It is claimed that the testimony of August Guhse, the financial secretary of the Manistee society, shows Mr. Homann was suspended by the society January 9, 1913; but the pencil memorandum upon which he based that testimony was excluded.

Section 4, art. 8, of the constitution of the Manistee local society, reads:

"The full dues shall be one dollar per month, and must be paid in advance."

While article 5, § 16, of the constitution of the local society reads:

"Every member who does not pay his dues or fines inside of a month after the first meeting in the month, or quarter, after they are due, is suspended from all benefits, except the Bundes insurance. After another month if such member does not pay he is expelled, but the financial secretary shall notify him eight days before such action. But this notice is not binding on the society."

It is claimed that, as Mr. Homann was in arrears $4, he was not only suspended, but was also by the automatic action of the by-laws expelled. It is claimed that a postal card was mailed to Mr. Homann January 3, 1913, and it is said it was a notice of suspension. The postal card was not offered in evidence, nor were its contents proven, nor was it shown that it reached Mr. Homann. A postal card mailed to him at the same address February 18, 1913, notifying him of a special assessment, reached him. It is claimed

by defendant this postal card was mailed by mistake. There is no proof that the notice mentioned in article 5, § 16, of the constitution of the local society, was ever given or ever attempted to be given.

The case in many respects is an anomalous one. As already appears, Mr. Homann was a member of the society for more than 20 years. For much of the time, according to the testimony of the local secretary, he was from one to three months late in the payment of his assessments, and this was the usual condition of a very large percentage of the members. The secretary testified that in July, 1912, Mr. Homann paid, and he receipted, $5 as the dues for May, June, July, August, and September. The dues when offered were habitually received without objection, even though they were from one to three months late. The secretary of the State society was a witness. On the cross-examination he testified in part:

"As secretary of the State Bund, I have a list of the members of the local society, and the moneys coming from the local society are sent to the treasurer of the bund. The time for sending them to the State treasurer is from the 1st to the 28th of the month, and every month the treasurer charges the local society with the dues for as many members as the report shows are in good standing. And when any member is suspended or expelled, we are notified by the local society. A member is suspended as soon as we are informed of the suspension by the local society. The State bund requires the local society to pay to the bund dues upon all members that are in good standing at the time of the last report. The local society pays the State bund dues or assessments of its members until they are suspended. Up to the time of Mr. Homann's death, the local society had paid the dues and per capita tax of Mr. Homann up to the 15th of February."

Mr. Smurthwaite, as attorney for the plaintiff, wrote the secretary a letter on March 19, 1913. This

letter was shown the witness, and the witness continued his cross-examination as follows:

"*Mr. Smurthwaite:* Now, Mr. Kersten, after reading that letter would you say you then had the report of the death of Mr. Homann?

"*A.* No, sir.

"*Q.* The report came after my letter?

"*A.* This report was dated.

"*Q.* The first notice you had of the death or suspension of Fred Homann, from this local society, was in my letter then. Is that true?

"*A.* You mean suspension, or do you mean death?

"*Q.* You said you had no notice of his suspension?

"*A.* Yes, the first information I received was through your letter.

"*Q.* The State bund received from the local society at Manistee all the moneys it ever was entitled to on account of Fred Homann up to the time of his death?"

The production of the beneficiary certificate and the proof of death made a *prima facie* case for the plaintiff. *Petherick* v. *Order of the Amaranth,* 114 Mich. 420 (72 N. W. 262), and the many cases cited therein; *Taylor* v. *Columbian League,* 135 Mich. 231 (97 N. W. 680, 106 Am. St. Rep. 392). Was this *prima facie* case overcome?

It is very clear, from what we have quoted, that the defendant society had received its full dues, and that neither Mr. Homann nor the officers of the local society regarded the by-laws we have quoted as self-executing. The case is within the reasoning of *Petherick* v. *Order of the Amaranth,* 114 Mich. 420 (72 N. W. 262); *Dick* v. *Order of the Amaranth,* 150 Mich. 215 (113 N. W. 1125); and *Roulo* v. *Schiller Bund,* 172 Mich. 557 (138 N. W. 244).

Judgment is affirmed.

BROOKE, C. J., and MCALVAY, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.