## IN RE DISSOLUTION OF THE LITCHFIELD COUNTY AGRICULTURAL SOCIETY.

First Judicial District, Hartford, March Term, 1917.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, JS.

Unless authorized by statute, courts have no power to dissolve corporations at the instance of private suitors.
Chapter 165 of the Public Acts of 1907 does not authorize the Superior

Court to dissolve corporations without capital stock, nor to appoint trustees for that purpose. The Act commits the winding-up proceedings to the board of management as statutory trustees, and provides that the dissolution of the corporation shall take place after they have completed their statutory duties, and shall be evidenced, not by a judicial decree, but by the act of the secretary of State approving the final certificate of the trustees.

Winding-up proceedings, although under direction of the court, are informal, and orders passed relative to successive attempts of an alleged member of the society or corporation to secure recognition as such by the trustees, are in the nature of interlocutory orders which the court can modify or vacate for cause shown.

An agricultural society chartered in 1818 became dormant about 1872 and so remained until about 1912, when a sale of its real estate began to be discussed. All of its records up to 1886 were destroyed by fire in that year, and thereafter the records were imperfect and fragmentary. In September, 1914, ten persons who had recently become members of the society sought to have the corporation dissolved, and were appointed to wind up its affairs and distribute its assets under direction of the court. One *C* testified that he had become a life member of the society before 1886 by the payment of $10, and that there were at one time several other life members, and the trial court so found. *Held* that although the original articles of association did not provide for life members, yet the practice of the society at or about 1860 in admitting such members laid a basis for an inference or presumption of fact that the articles had been duly amended to authorize such practice; and that the society and its trustees in winding-up proceedings were estopped to question the legality of the practice.

A court of equity never allows a corporation to obtain an unconscionable advantage by pleading that its own acts were *ultra vires*; and its trustees for winding-up purposes, most of whom did not join the society until after it had abandoned its corporate purposes, stand in no better position as against a life member.

A final judgment in winding-up proceedings should determine the amount to which each member of a corporation without capital stock is entitled; but as all its members are entitled to share equally in its net assets, a judgment recognizing an alleged member as a legal member of the society and entitled to receive his share of the assets, is practically a final one for purposes of appeal.

Argued March 6th—decided March 14th, 1917.

PETITION for the dissolution of the defendant, for the winding up of its affairs and the distribution of its net assets among the petitioners, who alleged that they

were all the surviving members of the Society, brought to the *Hon. William H. Williams* who ordered a dissolution and a distribution of the assets of the Society after the payment of its debts. After the denial (*Case, J.* and *Curtis, J.*) of certain motions by Arthur D. Catlin, who claimed to be a member of the Society, though not so treated by the petitioners, his application for recognition and for a share of the assets was granted (*Greene, J.*), and from a judgment in accordance therewith the petitioners appealed. *No error.*

*Charles T. Payne* and *John H. Lancaster*, for the appellants (petitioners).

*Samuel A. Herman*, for the appellee (Arthur D. Catlin).

BEACH, J. This controversy relates to the right of Arthur D. Catlin to participate as a member in the distribution of the assets of the Litchfield County Agricultural Society, a corporation without capital stock.

The Society was incorporated by Special Act in 1818 for the promotion of agriculture, rural economy and domestic manufactures. The articles of association provide that all who subscribe the articles shall be members; that members shall pay annual dues of $1; and that a member shall have liberty to withdraw upon giving written notice to the secretary and paying all dues and arrears.

In September, 1914, ten persons made an application to *Williams, J.*, apparently in attempted conformity with the statute regarding dissolution of corporations without capital stock (Chapter 165 of the Public Acts of 1907), in consequence of which the Superior Court for Litchfield County adjudged and decreed that the Society was thereby dissolved; that the ten petitioners

should wind up its affairs and distribute its assets under the direction of the court; and that all claims against the Society should be presented to its secretary before January 11th, 1915.

In so far as it purported to dissolve the corporation, this decree was ineffectual. Courts have no power to dissolve corporations at the instance of private suitors except if and as authorized by statute. *Low* v. *Pressed Metal Co.*, 91 Conn. 91, 99 Atl. 1.

The statute in question, which is the only statute relating to the dissolution of corporations without capital stock, does not authorize the Superior Court to dissolve such corporations, or to appoint trustees for that purpose. It commits the winding-up proceedings to the board of management as statutory trustees, and it provides that the dissolution of the corporation shall take place after they have completed their statutory duties, and shall be evidenced, not by a judicial decree, but by the act of the secretary of State approving the final certificate of the trustees.

For the purposes of this appeal the ten petitioners may be regarded as a managing board *de facto*, acting as statutory trustees.

The assignments of errors grouped under point V of the appellants' brief relating to questions of procedure, are without merit. The winding-up proceedings, although under the direction of the court, are informal, and the several orders of the court relating to Catlin's successive attempts to secure recognition are in the nature of interlocutory orders which the court might modify or vacate for cause shown.

The assignments of error based on the theory that *Judge Case's* denial of Catlin's previous application to be made a party to the proceedings necessarily involved a prior adjudication that Catlin was not a member of the Society, are evidently mistaken in point of fact;

because within one week *Judge Case* granted Catlin's application to bring a civil action against the trustees, which application was based solely on the same claim of membership.

The exceptions to the finding are also overruled. The finding that the Society became dormant about 1872 is plainly supported by Catlin's testimony. Paragraph six, which finds that nine out of the ten persons, who claim to be the only persons now entitled to share in the assets, did not join the Society until 1912, should perhaps be qualified, for the record book, Exhibit E, indicates that three of these joined before 1912; but the difference is not important. Paragraphs seven, eight and nine are fully sustained by the evidence contained in the file, relative to the claim of Charles T. Payne.

The foregoing disposes of all the assignments of error which are pursued on the brief, except those relating to the merits of Catlin's claim of membership.

The court has found that Catlin became a member of the Society in 1857, and has continued to be a member ever since; and the evidence abundantly supports the finding that he became a member about 1857. The only debatable questions on this branch of the case arise out of the fact that before 1860 Catlin paid $10 for a life membership and since then has paid no dues. The first objection is that the articles of association make no provision for life memberships. That is true of the original articles of association, which have been preserved because they are contained in the Special Act incorporating the Society. All the records of the Society between 1818 and 1886 were destroyed by fire, and from that date until 1912, when the sale of the Society's land and the dissolution of the corporation began to be agitated, the records are imperfect and fragmentary. There is, therefore, no record evidence

as to whether the original articles were or were not amended by a two-thirds vote of the members, as authorized by the Act of incorporation, and the only parol testimony bearing on that point is that of Catlin, who testified that there were quite a number of life members beside himself. Nobody contradicts him, and the presumption of fact is that some authority for issuing life membership tickets existed, which at that time was supposed to be sufficient. That being so, the Society and its trustees in winding-up proceedings are estopped to question the legality of the practice. The Society accepted a lump sum in lieu of annual dues, and thereby waived the payment of future annual dues for a valuable consideration which was deemed sufficient at the time. A court of equity never allows a corporation to obtain an unconscionable advantage by pleading that its own contracts were *ultra vires*, and the trustees, most of whom did not join the Society until long after it had abandoned its corporate purposes, stand in no better position as against a life member.

These considerations dispose of the whole case, for they apply also to the defense of laches, and to the suggestion that Catlin is bound to pay up arrears of back dues.

It has not escaped our attention that the judgment of the Superior Court is not technically a final judgment in the sense that it determines the amount to which Catlin is entitled; but as all members are entitled to equal shares in the net assets after payment of debts and expenses of administering the trust, the judgment is practically a final one for the purposes of appeal.

There is no error.

In this opinion the other judges concurred.