OF THE

## STATE OF ARIZONA

From December 7, 1920, to July 18, 1921.

---

[Civil No. 1830. Filed December 7, 1920.]

[193 Pac. 758.]

## SOVEREIGN CAMP OF THE WOODMEN OF THE WORLD, a Corporation, Appellant, v. PAULINE SMITH, Appellee.

1. INSURANCE—NOTICE OF CHANGE TO HAZARDOUS OCCUPATION OF PARTICULAR CLASS SUFFICIENT.—Where the by-laws of a fraternal insurer classified as hazardous the occupations of railroad firemen and switchmen, and required notice when a member should quit a nonhazardous occupation and take up a hazardous occupation, notice by a member that he had become a railroad fireman is sufficient, and will cover his change of occupation to a railroad switchman; additional notice of change from one hazardous occupation to another being no more necessary than notice of change from one nonhazardous occupation to another.

2. INSURANCE—NOTICE OF CHANGE OF OCCUPATION HELD GIVEN TO PROPER OFFICIAL; FRATERNAL INSURER CANNOT DENY LIABILITY BECAUSE ADDITIONAL PREMIUMS WERE NOT EXACTED WHERE REGULAR PREMIUMS WERE RECEIVED AND RETAINED.—Where the by-laws of a fraternal insurer required notice to be given to the clerk of the local camp or organization in case of change from a nonhazardous to a hazardous occupation, and the in-

---

1. On the question of provision for forfeiture or reduction of benefits in event of injury while engaged in more hazardous occupation, as applied to occasional or temporary acts, see note in L. R. A. 1915D, 312.

surer also made the clerk its collecting officer, the insurer cannot escape liability on a certificate, where the member in good faith gave the clerk notice of change to a hazardous occupation, but the clerk failed to exact the additional premium, and dues at the former rate were received and retained without question by insurer merely because by-laws provided they could not be waived by subordinate bodies, and Civil Code of 1913, paragraph 3490, recognizes the right of the insurer to so provide; the notice in this case being to the insurer itself.

3. Insurance—Burden of Proving Forfeiture on Insurer.—In an action on a fraternal insurance certificate, where the insurer claimed a forfeiture because the member had changed from a nonhazardous to a hazardous occupation without notice, etc., and the question of notice was put in issue, the jury were properly instructed that the insurer had the burden of proving that notice was not given, for where an insurer asserts a forfeiture, the burden of establishing the same is on it.

4. Estoppel—Where Facts are Admitted, Question is for Court.—Where facts on which estoppel was claimed were admitted, the question is one of law, and it is immaterial as to the burden of proof.

APPEAL from a judgment of the Superior Court of the County of Pima. Samuel L. Pattee, Judge. Affirmed.

Messrs. Kingan & Campbell, for Appellant.

Mr. A. A. Worsley and Mr. Gerald Jones, for Appellee.

ROSS, J.—This is a suit by Pauline M. Smith against the defendant, a fraternal insurance society, for the sum of $2,000, which she claims is due her on account of a beneficiary certificate issued to her husband, Oscar O. Smith, March 30, 1917, as a member of San Simon Camp, San Simon, Arizona, conditioned to pay her that amount should he die while in good standing as such member.

Defendant, in its answer, denies that Smith was in good standing, or that the certificate was in full force and effect at the time of his death, for the reason that

at the time of making the contract he was engaged in the occupation of railroad grader; that subsequent thereto, and about six months prior to his death, he changed his occupation to that of railroad switchman, in which he was employed at the time of his death. That the constitution and by-laws of the defendant society at the time of making contract, and ever since, contained the following provisions:

"Sec. 43. Persons engaged in the following occupations, to wit:

"(a) Structural iron workers, circus riders and trapeze performers, conductors and brakemen on railway freight trains, locomotive engineers and firemen, switchmen, hostlers and other similar railway or steamship employés, excepting agents, office men and those engaged in employment not more hazardous;
. . .

"(b) If a member engaged in any of the occupations or business mentioned in this section he shall within thirty days notify the clerk of his camp of such change of occupation, and while so engaged in such occupation shall pay on each monthly installment of assessment thirty cents for each one thousand dollars of his beneficiary certificate in addition to the regular rate. Any such member failing to notify the clerk and to make such payment as above provided shall stand suspended and his beneficiary certificate be null and void."

That Smith did not, within thirty days after he engaged in the occupation of switchman, notify the clerk of the San Simon Camp, W. O. W., nor pay the said defendant, while so engaged, on each monthly installment thirty cents for each $1,000 of his beneficiary certificate in addition to the regular rate, and because of the failure to give such notice and make the additional payment he became suspended and his certificate null and void.

In her replication plaintiff alleges, "Deceased during his lifetime did notify the clerk of said camp of

his change of employment to that of a railroad switchman," and that he paid defendant the amount of the premium required to be paid by contract of insurance, which was received and retained by defendant. The case was tried by the court with the assistance of a jury as to one question of fact. Provisions of the by-laws, other than the one pleaded and urged by defendant as supporting its contention that Smith at the time of his death had been suspended and his beneficiary certificate had become null and void, are as follows:

"Sec. 69. (a) No officer, employee or agent of the Sovereign Camp, or of any camp, has the power, right or authority to waive any of the conditions upon which beneficiary certificates are issued, or to change, vary or waive any of the provisions of this constitution or these laws, nor shall any custom on the part of any camp or any number of camps—with or without the knowledge of any sovereign officer—have the effect of so changing, modifying, waiving or foregoing such laws or requirements. Each and every beneficiary certificate is issued only upon the conditions stated in and subject to the constitution and laws, then in force or thereafter enacted.

"(b) The constitution and laws of the Sovereign Camp of the Woodmen of the World now in force, or which may hereafter be enacted, by-laws of the camp now in force, or which may be hereafter enacted, the application and certificate shall constitute a part of the beneficiary contract between the society and the member."

"Sec. 93. (g) The clerk of a camp shall not by acts, representations, waivers, or by vote of his camp, have any power or authority not delegated to him or to the camp by the constitution and laws of this society to bind the sovereign camp or his camp."

The question propounded to the jury, and answered in the affirmative, is as follows:

"Did the deceased, Oscar O. Smith, within thirty days after engaging in a hazardous occupation, notify

the clerk of Camp No. 35, Woodmen of the World, of such change of occupation?''

The evidence upon which this answer is based is that deceased changed his occupation to that of a railroad fireman in March, and that two or three weeks afterward he notified the clerk of San Simon Camp. In August he changed his employment from fireman to switchman, and was engaged in the latter capacity when he died. It is agreed deceased paid the regular rate of a nonhazardous occupation, and that he did not pay the additional thirty cents per $1,000 for hazardous occupation during the time he was engaged in such. Defendant tendered repayment to plaintiff of premiums and dues paid it from the time deceased changed his occupation, which was refused. Judgment was entered for plaintiff, and defendant appeals.

One of the defendant's contentions, as we understand it, is that plaintiff's reply that, ''Deceased, during his lifetime, did notify the clerk of said camp of his change of employment to that of railroad switchman,'' is not supported by the evidence, the undisputed evidence being that the notice to the clerk was a change to the occupation of railroad fireman. But, as we read it, the requirement of the contract in this respect is that the notice of a change from class to class must be given. That is, if a member is received as engaged in a nonhazardous occupation, on changing to a hazardous occupation, it is incumbent that he shall notify the clerk of the local camp. The contract permits him, without notice, to change from one nonhazardous occupation to another of the same character, or from a hazardous occupation to another of that class, the only purpose of requiring this notice to the clerk doubtless being that he may be informed of the rate of assessment to be levied and collected from the member. The present contract places railroad firemen and switchmen in the same

class, paying the same assessments. So we conclude that the allegation of notice of a change of occupation to that of switchman is supported by proof of notice that the change was to that of fireman, both being in the same class and paying the same dues. It is not claimed that the variance is material, or that defendant was surprised or prejudiced thereby.

It is next contended that in order to hold that deceased was in good standing and his contract of insurance a subsisting one at the time of his death, it will be necessary to find a waiver of the payment of the increase incurred by reason of the change, based upon the conduct of the clerk of the local camp, and this, it is insisted, cannot be allowed because of the inhibitions contained in the constitution and by-laws quoted above, and because we have a statute (paragraph 3490, Civil Code) which recognizes and confirms the right of defendant society, by its constitution and by-laws, to provide against any waiver of any of their provisions by its subordinate bodies, officers, or members. We think the limitation placed upon the local camp, its clerk and members, must be accepted, and that they cannot waive those things forbidden. Here, however, the defendant's constitution and by-laws contemplate that a change of occupation may be effected by a member of the defendant society at his pleasure, provided that within thirty days thereafter the clerk of the local camp is notified thereof, and thereafter an additional payment of thirty cents monthly is paid for each $1,000 of insurance. According to the jury's findings, the notice of change was given to the very officer designated by the defendant society upon whom such service should be made. It was therefore service on defendant. The fact that the clerk of the local camp failed to forward the notice or to advise the defendant and its head officers of such change does not militate against it as

notice to the defendant, inasmuch as notice to its authorized agent is notice to it.  If that be so, we are confronted with this situation: Within thirty days after deceased changed his occupation to a hazardous one, he notified defendant, as provided in its constitution and by-laws, of such change, and thereafter for a period of several months the defendant, with full knowledge of such change, in contemplation of law, received and retained without questioning it dues from the deceased on account of assessments at the regular rate.  The waiver or estoppel claimed, therefore, is not founded upon any action or conduct of the local camp or its officers or members, but upon defendant's own action, conduct, or omissions in accepting without protest or objection the lesser rate of assessment when its duty required it to collect from deceased the higher rate.

We are supported in this view by the following very recent cases: *Jegglin* v. *Sovereign Camp, W. O. W.,* 202 Mo. App. 367, 216 S. W. 815; *Sovereign Camp, W. O. W.,* v. *Putnam* (Tex. Civ. App.), 206 S. W. 970; *Sovereign Camp, W. O. W.,* v. *Miller* (Tex. Civ. App.), 220 S. W. 635.

In the Jegglin case notice of change to a hazardous occupation was given to the clerk of the local camp, and no additional dues for the increased hazard were demanded or paid.  The constitution and by-laws of the defendant society invoked, and the statute law of Missouri, were very much the same as ours.  The court said:

"When insured, through his brother, notified the local clerk that he was engaged in mining, this was a notice to the defendant itself of such fact, since that was the method prescribed by the defendant for giving notice.  If notice to the clerk was, under this provision of the by-laws, notice to the defendant itself, then the latter is in the position of having accepted

payment of all dues at the old rate down to the death of insured, with notice that he was engaged in the hazardous occupation of mining. It had this notice, because notice to the clerk was the only means provided by the laws of said defendant whereby notice could be given. This fact has a vital effect upon the question of waiver or no waiver, for the decision of such question depends upon the particular facts in each case. *Thompson* v. *Modern Brotherhood of America, supra,* 189 Mo. App. loc. cit. 17, 176 S. W. 506; *Modern Woodmen* v. *Breckenridge,* 12 Ann. Cas. 639, note.''

The Putnam case involved a change of occupation and a higher rate of assessment which was not paid, and this is what the court said:

''The receiving of notice of Putnam's change of occupation, and the collection of additional assessments resulting thereby, were among the powers vested in the local camp clerk under the by-laws, and the Sovereign Camp cannot evade responsibility for, or escape the consequence of, acts done by him which are necessarily and inseparably connected with the performance of the duties devolving upon him. The local clerk had notice of all facts relating to, affecting, and controlling the amounts payable by Putnam, and demanded and accepted certain sums as being sufficient, and Putnam relied upon this as being correct, and the Sovereign Camp is estopped from claiming a forfeiture for insufficient payments.''

It is true that at the time the Putnam case arose Texas had no statute like our paragraph 3490; and it is also true that in a later case (*Sovereign Camp, W. O. W.,* v. *Wernette* (Tex. Civ. App.), 216 S. W. 669)—and after such a statute had been adopted by that state—it was said in passing:

''There could, therefore, no question of waiver or estoppel arise under the facts of this case on account of any . . . knowledge of Zizik [clerk] since 1913,'' the date such statute was adopted.

The facts in the Wernette case, however, were that the beneficiary certificate was void *ab initio* because obtained by fraud.   The court said:

"The facts of this case do not bring it within the purview of the Putnam case."

The general statement by the court "that the decisions as to waiver and estoppel cited by appellee were made in cases in which the acts upon which they were based occurred prior to 1913, . . . and the same rule cannot properly be made as to facts occurring since that year," cannot be fairly construed as indicating a different conclusion in the Putnam case would have been necessary had the laws of Texas at that time recognized the right of fraternal societies in their constitution and by-laws to contract against waiver and estoppel by subordinate bodies, officers, or members.   The Miller case, *supra*, cites with approval the Putnam case upon the very question here involved.

The cases relied upon by defendant go to the extent of holding that the constitution and by-laws of fraternal societies are a part of the contract, and that when they provide that subordinate bodies, officers and members, cannot by any act or omission waive any provision of a contract, such stipulations are binding, and cannot be disregarded by the parties or the courts.   *Modern Woodmen* v. *Tevis*, 117 Fed. 369, 54 C. C. A. 293, was a case in which the member had defaulted in making payment of assessments to the clerk of the local camp when they became due, but the clerk accepted them afterward and after the member had died.   The court held that the clerk of the local camp was the agent of the head camp to collect, receive, and remit the assessments at the times and in the manner prescribed for their payment by the by-laws, and at no other times and under no other

conditions, and "that he was without authority to extend the time of payment of benefit assessments, to waive defaults in their payment, or to reinstate the delinquent member who was not in good health, or who failed to furnish a warranty thereof."

In the present case, can it be said that Smith had unjustifiably defaulted when he paid to the agent of defendant at the times and in the manner prescribed by the by-laws all assessments in the amount demanded by the agent? If the agent, whose duty it was to collect the assessments, asked for a less sum than he should under the by-laws, and the member, acting in perfect good faith, paid what was demanded, no failure of payment in the sense in which that expression is used in the by-laws would occur. His situation is different from the member who pays no attention to his assessments, allows them to become delinquent, and thereafter seeks reinstatement by paying up past-due assessments to the clerk of the local camp, in disregard of the plain provisions of the by-laws, and yet this may be done under paragraph 3490, Civil Code, and thereby prevent a forfeiture.

Another case relied on by defendant is *Valentine* v. *Head Camp, Pacific Jurisdiction, W. O. W.*, 180 Cal. 192, 8 A. L. R. 380, 180 Pac. 2. It appears in that case the member at the time of his death was delinquent several months' assessments. A recovery was denied upon reasons following closely those given by the court in the Tevis case.

In *Brittenham* v. *Sovereign Camp, W. O. W.*, 180 Mo. App. 523, 167 S. W. 587, it appears that the member changed his occupation, and neither notified the local camp of such change nor paid the increased assessment.

The case of *Cole* v. *Knights of Maccabees* (Tex. Civ. App.), 188 S. W. 699, was one in which there was a total neglect to pay assessments when due, and,

such being made a ground of forfeiture of membership, a right of recovery was denied the beneficiary.

A case more nearly like the present one than any we have found, except the Jegglin and Miller cases, *supra,* is *Simmons* v. *Sovereign Camp, W. O. W.,* 136 Tenn. 233, 188 S. W. 941. The member in that case, however, failed to give any notice of the change of occupation within thirty days, as the by-laws required, and also failed to make the additional payment attaching by reason of the change. A recovery was denied even though the assessment at the regular rate had been paid; it appearing that "knowledge or acquiescence on the part of the sovereign officials of the order was negatived." If the notice of the change of occupation had been given, as in the instant case, in conformity with the society's by-laws, knowledge on the part of the sovereign officials would have been presumed. We have thus examined most of the cases cited by defendant for the purpose of showing that in each a different state of facts was present than in this case justifying a different conclusion of law. The distinguishing fact here is that the sovereign camp, in contemplation of law, knew that Smith had changed his occupation, and, in accepting his assessments at the regular rate, waived its right to claim a forfeiture because the higher rate, which it never demanded, was not paid.

It is next contended by defendant that the court committed error in instructing the jury that the burden of proof was on it to show that Smith did not give the clerk of the local camp, within thirty days after his change of occupation to a hazardous one, notice of such change. It is necessary to look to the pleadings in order to determine who had the burden of proof upon this issue. Defendant admits the execution and issuance of the benefit certificate to Smith, the identity of the beneficiary; also that Smith

died on January 30, 1917, and alleges that he was not in good standing at the time of his death because of his change of occupation without notifying the clerk of the local camp and paying the extra assessment called for by the by-laws. Plaintiff's reply puts in issue the question of notice by alleging that it was given, and admits the extra assessment was not paid. One of the grounds assigned by defendant for forfeiture is therefore conceded and the other contested. It was the latter that was submitted to the jury upon the theory that, if the jury found that no notice was given, the defendant's plea of forfeiture was established. The law seems to be well settled that where a society seeks to escape liability on the grounds of forfeiture, it has the burden of proof on that issue. 29 Cyc. 232, 233.

The defendant's suggestion that, plaintiff having pleaded estoppel, the burden was upon her, might be well enough if the facts upon which she relied were in dispute. But plaintiff concedes a failure to pay extra assessment for hazardous occupation, and it becomes a question of law, and not of fact, as to whether, under the circumstances, the defendant, having accepted the lower rate of assessment, estopped itself from questioning the validity and existence of the benefit certificate.

The judgment of the lower court is affirmed.

CUNNINGHAM, C. J., and BAKER, J., concur.