HENRIETTA L. PERRIGO vs. THE CONNECTICUT COMMERCIAL TRAVELERS MUTUAL ACCIDENT ASSOCIATION, INC.

Third Judicial District, Bridgeport, October Term, 1924.

WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

A mutual assessment insurance association may waive the formal requirements of its by-laws for the reinstatement of delinquent members, by establishing a custom, known to and acquiesced in by its general or managing officers, of automatically restoring all such members to good standing upon a belated payment of dues.

In the present case, the jury might have found that the plaintiff's intestate mailed a check for his fraternal benefit assessment, then more than a week overdue, to the defendant on Friday evening, which reached the defendant's post-office box prior to Sunday evening and was opened on the following morning by the assistant secretary who, in accordance with a custom which had prevailed in the office of the company for more than three years and was relied upon by the decedent who had previously made belated payments, accepted the check and mailed a receipted bill stamped "reinstated" to the decedent who had met his death at a theatre fire on Sunday evening. The defendant's by-laws, which were incorporated in the decedent's policy by reference, provided that nonpayment of an assessment should *ipso facto* suspend a member who could then be reinstated only by action of the board of directors. *Held* that the trial court erred in directing a verdict for the defendant.

The case of *Coughlin* v. *Knights of Columbus*, 79 Conn. 218, overruled to the extent that it conflicts with this holding.

Argued November 6th—decided December 12th, 1924.

ACTION by the beneficiary to recover the amount of a policy of fraternal benefit insurance issued by the

defendant against the accidental death of the insured, brought to the Superior Court in New Haven County and tried to the jury before *Wolfe, J.;* the court directed a verdict for the defendant, and from the judgment rendered thereon the plaintiff appealed. *Error and new trial ordered.*

Plaintiff sues as the beneficiary named in a certificate of accident insurance issued to Harry B. Perrigo, her deceased husband. Defendant is a mutual benefit insurance association incorporated under the laws of Connecticut and located at New Haven. Its by-laws provide for the levying of assessments as needed; that any member who fails to pay or cause to be paid to the secretary and treasurer of the association the amount of any assessment within thirty days after date of mailing notice thereof to his last address, shall thereupon cease to be a member of the association, and shall forfeit his membership and all rights, benefits and privileges; that no person shall or may be reinstated as a member except by the board of directors or a committee thereof, and that no officer of the association or other person shall have authority to waive any of the provisions of the by-laws. These by-laws are incorporated by reference in the certificates of insurance, and the defense is made that Mr. Perrigo was not a member of the association at the time of his death, because he did not pay the assessment last levied before his death until after thirty days from the date thereof, and had not been reinstated in the manner provided for in the by-laws.

There was evidence from which the jury might reasonably have found the following facts: On October 18th, 1921, an assessment was levied and notice thereof sent to and received by Mr. Perrigo stating that it was payable not later than noon on November 18th. He did not pay within the time limited, but did, on

Friday evening, November 25th, mail his check in payment thereof to the secretary. This check was not found in the post-office box of the association on Saturday morning about 8 o'clock, when the assistant secretary, Miss Carney, collected the mail. Because it was Saturday, she did not go to the post office again until Monday morning, November 28th, when she found the check and, immediately upon taking the mail to the office of the association, stamped the check for deposit, and mailed the receipted bill for the assessment back to Mr. Perrigo, stamped "Reinstated. Paid Nov. 28, 1921, C. B. Nichols, Secy. Per C." At the same time she stamped Mr. Perrigo's index card with the word "reinstated." All this was done pursuant to a custom of so dealing with belated payments of assessments, which had prevailed, to Miss Carney's knowledge, for some three years. At that time she did not know that Mr. Perrigo had lost his life in the Rialto Theatre fire on Sunday evening, November 27th. Mr. Perrigo knew of the prevailing custom and relied on it in omitting to pay the assessment in question on time. Upon nine previous occasions his belated payments of assessments had been accepted and receipted for in the same form.

*Harry L. Edlin,* for the appellant (plaintiff).

*William L. Hadden,* for the appellee (defendant).

BEACH, J. The trial court was undoubtedly justified by the broad language of the decision in *Coughlin* v. *Knights of Columbus,* 79 Conn. 218, 64 Atl. 223, in directing a verdict for the defendant. In that association, as in this, a custom of accepting belated payments of assessments in disregard of the by-laws prevailed; such payments being made to and accepted by the

secretaries of local councils and by them turned over to the national secretary who, with other officers of the order, knew of and acquiesced in the practice; and the relevant by-laws of the Knights of Columbus were practically the same as those of the defendant in this action.

The plaintiff challenges the soundness of the decision in the *Coughlin* case on principle and on authority, and asks us to re-examine the doctrine there announced in so far as it holds that a member of a mutual assessment insurance association, being charged with knowledge of the limitations imposed by the by-laws upon the authority of its agents and officers, is in no position to claim that he was misled by and relied on a long-continued custom of disregarding forfeitures, although such custom was known to and acquiesced in by the general officers of the association. Of course, a member of such an association cannot claim that the association has conferred upon an agent ostensible authority to do that which the member knows he is forbidden to do, simply because the agent has done the thing forbidden. This proposition is elementary in its application to a single act done in violation of a limitation of authority known to the person dealing with the agent, though he be a general officer of the association. *Lyon v. Royal Society of Good Fellows,* 153 Mass. 83, 26 N. E. 236. The association itself acting directly by vote cannot arbitrarily reinstate a deceased member in violation of its own constitution. *Societa Unione Fratellanza Italiana v. Leyden,* 225 Mass. 540, 114 N. E. 738.

The debatable ground seems to begin at the point where disregard of the by-laws ceases to be a discrimination in favor of individuals, and attains the proportions of a recognized custom of indiscriminately treating the belated payment and acceptance of assessments

as automatically restoring delinquents to membership; thus interpreting the forfeiture declared by the by-laws as a device for securing prompt payment, which has accomplished its intended purpose when payment is made within a reasonable time after it is overdue. In almost all of the decided cases, the organization of the mutual benefit association has included a central corporate body—the defendant in the action—and a number of subordinate branches each possessing a more or less independent legal personality; and a "decided conflict" of opinion has arisen upon the question whether or not a custom of disregarding forfeitures on the part of a subordinate branch will bind the central corporation. *Bixler* v. *Modern Woodmen of America*, 112 Va. 678, 72 S. E. 704, 38 L. R. A. (N. S.) 571, and cases collected in the note.

We are not in this case directly concerned with the merits of this conflict, for the reason that the defendant in this action has no subordinate branches but deals directly with its members in all of its activities. Nevertheless, the cases are instructive. Some of them hold that a custom of disregarding forfeitures established by a local branch will bind the parent corporation without any evidence of actual knowledge and acquiescence by its general officers. *Painter* v. *Industrial Life Asso.*, 131 Ind. 68, 30 N. E. 876; *Trotter* v. *Grand Lodge, L. O. H.*, 132 Iowa, 513, 109 N. W. 1099; *Sovereign Camp, W. O. W.* v. *Smith*, 22 Ariz. 1, 193 S. W. 758; *Head Camp, W. O. W.* v. *Bohanna*, 59 Colo. 545, 151 Pac. 428 (a typical case in which the gap is bridged by holding that as matter of law, the knowledge of a local officer is knowledge of the central corporation); *Jones* v. *Knights of Honor*, 236 Ill. 113, 86 N. E. 191; *High Court, Order of Foresters* v. *Schweitzer*, 171 Ill. 325, 49 N. E. 506; *Petersen* v. *Sovereign Camp, W. O. W.*, 97 N. J. L. 497, 117 Atl. 601. Not all of

these are cases of default in prompt payment of assessments. Some relate to employment in forbidden occupations, and the Arizona case notes a distinction on this ground at page 11. See also note to *Modern Woodmen of America* v. *Breckenridge*, 10 L. R. A. (N. S.) 136 (75 Kan. 373, 89 Pac. 661). The other cases hold that a custom of disregarding forfeitures by a local branch does not bind the central organization, in the absence of evidence of actual knowledge and acquiescence on the part of the managing officers of the defendant corporation. *Kocher* v. *Supreme Council, Cath. Ben. Legion*, 65 N. J. L. 649, 654, 48 Atl. 544; *Modern Woodmen of America* v. *Tevis*, 117 Fed. 369; *Bixler* v. *Modern Woodmen of America*, 112 Va. 678, 72 S. E. 704; *Knights of Columbus* v. *Burroughs*, 107 Va. 671, 60 S. E. 40; *Kennedy* v. *Grand Fraternity*, 36 Mont. 325, 92 Pac. 971.

All these cases, though not squarely in point, suggest more or less strongly that the central corporation would have been held bound by the custom in case its managing officers had known of and approved it. Thus in *Kocher* v. *Supreme Council, Cath. Ben. Legion, supra*, at page 654, it is said: "There is a class of cases which may, perhaps, form an exception to the application of the general principles above laid down. And that is where a course of dealing by officers and agents of a corporation, at variance with the strict limitation of duty, has been established by proof of the usage, which has been permitted to grow up in the transaction of its business, and of the acquiescence of its managing officers charged with the duty to provide and control the company's business." And in *Modern Woodmen of America* v. *Tevis, supra*, it is said, at page 375: "The acts of the clerk of the local camp in extending the times of payment of the assessments upon its members and in reinstating delinquent members without warranties

of good health, were unauthorized by the society, and, in the absence of knowledge and acquiescence in them by some of the chief officers of the head camp, were ineffective to establish any estoppel against the society, or any waiver by it of any of the provisions of the agreement." The *Tevis* case was cited and the foregoing excerpt quoted with approval in *Bixler* v. *Modern Woodmen of America, supra,* reaffirming *Knights of Columbus* v. *Burroughs, supra.* In *Kennedy* v. *Grand Fraternity, supra,* at page 344, it is said: "'Where the waiver relied on is the act of an agent, it must be shown either that the agent had express authority from the company to make the waiver, or that the company subsequently, with knowledge of the facts, ratified the act of the agent.'" We have found no decision except the *Coughlin* case, holding that a custom of disregarding forfeitures known to and acquiesced in by the managing officers of the insuring corporation is not binding upon it, when acted on and relied on by a member.

On the other hand, all the cases we have found in which it has been shown that a technically delinquent member has acted in reliance upon an established custom adopted and approved by the insuring corporation itself,—acting by its managing officers,—of disregarding forfeitures imposed by its by-laws, are unanimous in holding that the corporation is bound by its own established custom of conducting its own business. " The custom of the subordinate lodge . . . could not, of itself, and without the knowledge and approbation, express or implied, of the grand lodge, operate as a waiver of the provisions for the forfeiture of the insurance and the suspension of the member appearing in General Law 197. But we think if this custom was brought to the notice . . . of the grand lodge, and instead of being reprobated, received either express approval or that approval which should be

implied from silence, the general law must be regarded as modified by the existing custom." *Burke* v. *Grand Lodge, A. O. U. W.*, 136 Mo. App. 450, 457, 118 S. W. 493. "A member dealing with a subordinate officer of the society, knowing his duties to be prescribed by law, has no right to rely on the act of that officer, if he should attempt to waive a requirement which under the law he has no right to waive. But when he has dealings of that kind with such officer and those dealings are of such a nature that they must pass under the observation of those who have in charge the ultimate management of the company's affairs to such an extent as to justly induce the member to believe that the practice is approved by the company itself, the company is estopped to take advantage of the situation." *McMahon* v. *Knights of the Maccabees*, 151 Mo. 522, 537, 52 S. W. 384. In *Edmiston* v. *Homesteaders*, 93 Kan. 485, 144 Pac. 826, and *Homann* v. *Allgemeiner Arbeiter Bund*, 184 Mich. 417, 151 N. W. 559, the courts, having found that there was some evidence that a prevailing custom of accepting belated assessments was known to and acquiesced in by the general officers of the corporation, held in each case that the question of liability was properly submitted to the jury.

In *Crowley* v. *A. O. H. Widows and Orphans Fund*, 222 Mass. 228, 110 N. E. 276, the defendant's by-laws were practically identical with those of this defendant, a like custom of accepting belated assessments was shown, an overdue payment was mailed to defendant and received before the death of the insured on the same day, and the defendant transacted its insurance business directly with its members. In upholding a verdict for the plaintiff the court said, on page 232: "It is a general rule that the officers of a mutual beneficiary insurance association have no authority to

waive its by-laws so far as they relate to the substance of the contract. *McCoy* v. *Roman Catholic Mutual Ins. Co.*, 152 Mass. 272 [25 N. E. 286]; *Lyon* v. *Royal Society of Good Fellows*, 153 Mass. 83 [26 N. E. 236]. In this case no question arises as to a waiver of the by-laws by any agent or officer of the company. It appears from the report that the notices of the assessments were sent by the defendant corporation and that the payments of all the assessments were made to and received by the defendant. *Rice* v. *New England Mutual Aid Soc.*, 146 Mass. 248 [15 N. E. 624]. A waiver of important provisions of a written contract is not to be inferred from slight evidence. It appears from the terms of the report that during the period of eleven years preceding the death of the certificate holder he had paid and the defendant had received assessments in at least fifty-eight instances after the time limit fixed by the by-laws for making such payments had expired, and that no action was taken at any time by the defendant to enforce a forfeiture against Crowley of his rights under his certificate by reason of his delay in making payments beyond the time limit, nor was any demand ever made upon him for the payment of an additional sum of fifty cents for reinstatement, nor was he ever required to furnish a medical certificate of health as provided by the by-laws. In view of these undisputed facts we think it plain that it was a question for the determination of the jury whether the defendant had waived the requirement of the by-laws that the payment of the December assessment should be made within thirty days after the same became due."

In view of this array of authority, little remains to be said. An insurance policy, no matter what by-laws are incorporated in it by reference, is but the written expression of a contract, which the parties themselves

(not being under legal disability or prohibition) may modify by mutual consent. This is the legal basis of most so-called "waivers" of conditions in insurance policies. As to the legal capacity of the defendant to consent to the modification evidenced by the custom testified to, it is probably true that a mutual benefit association cannot make a discriminatory contract of insurance in violation of the principle of mutual equality guaranteed to its members by its constitution or by-laws. *Societa Unione Fratellanza Italiana* v. *Leyden,* 225 Mass. 540, 114 N. E. 738; *Lyon* v. *Royal Society of Good Fellows,* 153 Mass. 83, 26 N. E. 236. But the custom of condoning reasonably short delays in paying assessments, being applicable to all members, is not open to that objection. Such a custom is advantageous as well to the corporation as to the members, and is not opposed to any declared public policy. That being so, the corporation, having consciously received and retained assessments to which, except for the modification of the contract, it would not have been entitled, cannot be permitted to deny that the contract was in fact so modified. *Union Hardware Co.* v. *Plume & Atwood Mfg. Co.,* 58 Conn. 219, 221, 20 Atl. 455; *In re Litchfield County Agricultural Soc.,* 91 Conn. 536, 100 Atl. 356.

On the testimony before us, the jury might reasonably have found that the custom testified to was known to and approved by the defendant corporation; that its assistant secretary, employed at headquarters, was permitted, if not instructed, to receive belated payments from members as a matter of course; that such custom had prevailed for three years or more, and that it was known to and relied on by the deceased. Whether the payment in question was received by the defendant before Mr. Perrigo's death was a question for the jury. *Crowley* v. *A. O. H. Widows and Orphans Fund,* 222

Mass. 228, 110 N. E. 276. The claim that the deceased was not restored to membership until the word "reinstated" was stamped upon his index card, is not tenable. If the jury at the new trial should find that the custom testified to was known to and acquiesced in by the defendant, his membership was never forfeited. To the extent that the decision in *Coughlin* v. *Knights of Columbus*, 79 Conn. 218, 64 Atl. 223, conflicts with our present conclusion, it is overruled.

There is error and a new trial is ordered.

In this opinion the other judges concurred.